Stephen D. Hibbard (SBN 177865)
SHEARMAN & STERLING LLP
Four Embarcadero Center, Suite 3800
San Francisco, CA 94111
Telephone: (415) 616-1100
Facsimile: (415) 616-1199
Email: shibbard@shearman.com

*Attorneys for Defendant*
*ZST Digital Networks, Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| ROBERT SCOTT, et al., | 11-CV-3531-GAF-JC |
| Plaintiffs, | |
| v. | **DEFENDANT ZST DIGITAL NETWORKS, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| ZST DIGITAL NETWORKS, INC., et al., | |
| Defendants. | |
| | Judge: Hon. Gary Allen Feess |
| | Courtroom: 740 |
| | Hearing Date: August 6, 2012 |
| | Hearing Time: 9:30 a.m. |

1    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    NOTICE IS HEREBY GIVEN that on August 6, 2012, or as soon thereafter

3    as the matter may be heard, in the courtroom of the Honorable Gary Allen Feess,

4    Room 740, 312 N. Spring Street, Los Angeles, CA  90012, Defendant ZST Digital

5    Networks, Inc. ("ZSTN" or the "Company") will and hereby does move the Court

6    for an order pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6)

7    dismissing the Amended Class Action Complaint (the "Second Amended

8    Complaint" or "SAC") (Dkt. No. 94) with prejudice on the grounds that it fails to

9    state a claim upon which relief can be granted and does not meet the requirements of

10   Federal Rule of Civil Procedure 9(b).

11   This Motion applies to plaintiff's claims asserted under Section 11 of the

12   Securities Act of 1933 and is based on this Notice of Motion and Motion; the

13   concurrently filed Memorandum of Points and Authorities; the Memoranda of

14   Points and Authorities filed by Defendants WestPark Capital, Inc. ("WestPark"),

15   Rodman & Renshaw, LLC ("Rodman & Renshaw"), and Kempisty & Company,

16   P.C. ("Kempisty"); the Declaration of Stephen D. Hibbard dated April 27, 2012 (the

17   "Hibbard Decl.") and exhibits thereto; the Request for Judicial Notice dated April

18   27, 2012; and on such further written and oral argument as may be presented at or

19   before the time the Court makes a ruling on the Motion.

20   This Motion is made following the conference of counsel pursuant to L.R. 7-3

21   which took place on April 20, 2012.[1]

22   ───────────────

23   [1]  The Court denied ZSTN's earlier motion to dismiss the claim plaintiff asserted
     under Section 10(b) of the Securities Exchange Act of 1934. *Scott v. ZST Digital*
24   *Networks, Inc.*, 2012 WL 538279 (C.D. Cal. Feb. 14, 2012).  In the Second
     Amended Complaint, plaintiff states that "[n]o material changes ha[d] been made
25   . . . concerning the claims that survived dismissal under the Court's February 14
     order," including the Section 10(b) claim against ZSTN.  (SAC n.1.)  Because
26   the Court ruled that the Section 10(b) claim against ZSTN was adequately pled,
     and because plaintiff represents that he made no material changes with respect to
27   that claim, ZSTN does not reargue for dismissal of that claim in this motion.
     ZSTN does, however, incorporate and preserve for appeal all arguments made by
28   ZSTN, WestPark, Rodman & Renshaw, and Kempisty with respect to the
     Section 10(b) claims in their motions to dismiss.

1   Dated:  April 27, 2012          SHEARMAN & STERLING LLP

2

3                                   /s/ Stephen D. Hibbard
                                    Stephen D. Hibbard (SBN 177865)
4                                   SHEARMAN & STERLING LLP
                                    Four Embarcadero Center, Suite 3800
5                                   San Francisco, CA  94111
                                    Telephone:  (415) 616-1100
6                                   Facsimile:  (415) 616-1199
                                    Email:  shibbard@shearman.com
7

8
                                    *Of Counsel*:
9
                                    Christopher R. Fenton (*pro hac vice*)
10                                  Edward G. Timlin (*pro hac vice*)
                                    Andrew J. Rodgers (*pro hac vice* pending)
11                                  SHEARMAN & STERLING LLP
                                    599 Lexington Avenue
12                                  New York, NY  10022
                                    Telephone:  (212) 848-4000
13                                  Facsimile:  (212) 848-7179
                                    Email:  christopher.fenton@shearman.com
14                                  Email:  edward.timlin@shearman.com
                                    Email:  andrew.rodgers@shearman.com
15

16                                  *Attorneys for Defendant ZST Digital*
                                    *Networks, Inc.*
17

18

19

20

21

22

23

24

25

26

27

28

1

## **<u>TABLE OF CONTENTS</u>**

2

Page

3   PRELIMINARY STATEMENT .................................................................. 1

4   STATEMENT OF FACTS ...................................................................... 2

5       *The Initial Public Offering* .............................................................. 2

6       *The Selling Shareholder Registration Statement* ............................... 3

7       *ZSTN Repeatedly Warns It Is Subject to "Vague and Uncertain" PRC
8       Laws and Regulations and that Noncompliance Could Have a
    Material Effect* ............................................................................ 4

9       *Short Sellers Take Aim at the Company* .......................................... 5

10  PROCEDURAL HISTORY AND SUMMARY OF THE ALLEGATIONS ............ 5

11  ARGUMENT ..................................................................................... 8

12  I.     LEGAL STANDARD ................................................................. 8

13  II.    PLAINTIFF FAILS TO PLEAD STANDING UNDER SECTION 11 .......... 9

14      A.   Plaintiff Fails to Plead Facts Showing His Shares Can Be
        Traced Directly to a Particular Registration Statement ...................... 11
15
16      B.   Alleged Common Misstatements and Omissions Do Not
        Relieve Plaintiff of His Burden to Plead Standing .............................. 13

17      C.   Plaintiff Cannot Establish Standing Merely by Pointing Out that
        Certain Defendants Had Some Involvement with Both
18          Registration Statements ...................................................... 16

19  III.   PLAINTIFF FAILS TO STATE A CLAIM BASED ON THE
      ALLEGED SUBMISSION OF INACCURATE FINANCIAL RESULTS
20        TO CHINESE REGULATORS.................................................... 18

21  IV.   THE COMPLAINT AFFIRMATIVELY ESTABLISHES THAT THE
      ALLEGED MISSTATEMENTS AND OMISSIONS DID NOT CAUSE
22        PLAINTIFF'S LOSS .............................................................. 20

23  V.    THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED
      WITHOUT LEAVE TO AMEND ................................................. 21

24
CONCLUSION.................................................................................22

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

*Abbey v. Computer Memories, Inc.*, 634 F. Supp. 870 (N.D. Cal. 1986)............9, 16

*Amorosa v. Ernst & Young LLP*, 682 F. Supp. 2d 351 (S.D.N.Y. 2010)...............21

*Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868
   (2009) ..................................................................................................8, 18

*Barnes v. Osofsky*, 373 F.2d 269 (2d Cir. 1967) .........................................10, 15, 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955,
   167 L. Ed. 2d 929 (2007) ...............................................................................8

*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S. Ct. 1917,
   44 L. Ed. 2d 539 (1975) ................................................................................10

*In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F. Supp. 2d 404
   (S.D.N.Y. 2009) ...........................................................................................20

*Brody v. Transitional Hosps. Corp.*, 280 F.3d 997 (9th Cir. 2002) .......................19

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
   511 U.S. 164, 114 S. Ct. 1439, 128 L. Ed. 2d 119 (1994) ..............................9

*In re Century Aluminum Co. Sec. Litig.*, 749 F. Supp. 2d 964
   (N.D. Cal. 2010) .............................................................................................9

*In re Century Aluminum Co. Sec. Litig.*, 2011 WL 830174
   (N.D. Cal. Mar. 3, 2011)  .............................................................................21

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 112 S. Ct. 1146,
   117 L. Ed. 2d 391 (1992) .............................................................................13

*In re Exodus Commc'ns, Inc. Sec. Litig.*, 2006 WL 1530081
   (N.D. Cal. June 2, 2006)...............................................................................21

*In re FoxHollow Techs., Inc. Sec. Litig.*, 2008 WL 2220600
   (N.D. Cal. May 27, 2008)..............................................................................19

*Grand Lodge of Pa. v. Peters*, 550 F. Supp. 2d 1363 (M.D. Fla. 2008) .................11

*Gustafson v. Alloyd Co.*, 513 U.S. 561, 115 S. Ct. 1061,
   131 L. Ed. 2d 1 (1995) ...............................................................................9, 10

*Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076 (9th Cir. 1999).............9, 10, 15

*Hildes v. Anderson*, 2010 WL 2836769 (S.D. Cal. July 19, 2010) ........................20

*Joseph v. Wiles*, 223 F.3d 1155 (10th Cir. 2000) ..................................................15

*K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 108 S. Ct. 1811,
   100 L. Ed. 2d 313 (1988) .............................................................................14

*Krim v. pcOrder.com, Inc.*, 402 F.3d 489 (5th Cir. 2005)...................................9, 10

*Lee v. Ernst & Young, LLP*, 294 F.3d 969 (8th Cir. 2002) .....................................15

*Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049
    (9th Cir. 2008) ..................................................................................21, 22

*Philco Inv., Ltd. v. Martin*, 2011 WL 4595247 (N.D. Cal. Oct. 4, 2011) ...............19

*Plichta v. SunPower Corp.*, 790 F. Supp. 2d 1012 (N.D. Cal. 2011) .....................10

*Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*,
    714 F. Supp. 2d 475 (S.D.N.Y. 2010)...........................................................16

*Rafton v. Rydex Series Funds*, 2011 WL 31114 (N.D. Cal. Jan. 5, 2011) ..............15

*Rubke v. Capitol Bancorp Ltd.*, 551 F.3d 1156 (9th Cir. 2009) ...................8, 17, 19

*Scott v. ZST Digital Networks, Inc.*, 2012 WL 538279
    (C.D. Cal. Feb. 14, 2012) ...................................................................*passim*

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001).....................4, 12

*In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399 (9th Cir. 1996)......................................8

*Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*,
    2011 WL 1253250 (D. Ariz. Mar. 31, 2011) ...............................................22

*United States v. Barazza-Lopez*, 659 F.3d 1216 (9th Cir. 2011)............................14

*In re Wells Fargo Mortg.-Backed Certificates Litig.*, 712 F. Supp. 2d 958
    (N.D. Cal. 2010) ..........................................................................................15

*Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981 (9th Cir. 2009)...........21, 22

**STATUTES**

15 U.S.C. § 77k...............................................................................................*passim*

1   Defendant ZSTN respectfully submits this memorandum of law in support of

2   its motion to dismiss the Second Amended Complaint pursuant to Federal Rules of

3   Civil Procedure 9(b), 12(b)(1), and 12(b)(6).  ZSTN also incorporates by reference

4   the applicable arguments made by defendants WestPark, Rodman & Renshaw, and

5   Kempisty.

6   ## PRELIMINARY STATEMENT

7   After finding that plaintiff lacked standing to assert claims under Section 11

8   of the Securities Act of 1933 (the "Securities Act"), the Court dismissed plaintiff's

9   Securities Act claims with leave to amend.  The Court instructed plaintiff that he

10   must plead in any further amended complaint facts showing either that he purchased

11   shares in ZSTN's initial public offering (the "IPO"), or that his shares can be traced

12   to that offering.  The Second Amended Complaint, however, fails to comply with

13   the Court's instructions.

14   In lieu of facts showing that his shares can be traced to the IPO registration

15   statement (as opposed to another registration statement), plaintiff attempts to rewrite

16   the record to argue that there was only one registration statement.  According to

17   plaintiff, he does not have to plead traceability because all of ZSTN's shares were

18   issued pursuant to the same offering.  But the documents on which plaintiff relies

19   amply demonstrate that simply is not true.  As the Court explained in its order

20   addressing defendants' initial motion to dismiss, there are two registration

21   statements, not one:  the first was filed with the SEC in connection with the

22   Company's IPO, and the second was filed with the SEC in connection with the

23   registration by certain selling shareholders of ZSTN shares for resale.

24   Plaintiff seeks to evade his statutory burden of pleading standing by arguing

25   that the existence of two, separate registration statements should be ignored because:

26   (i) the alleged misstatements and omissions were common to both registration

27   statements; and (ii) certain defendants were involved in some way with both

28   offerings.  The novel theories that plaintiff posits should be rejected because they

1   contravene the statute's plain language and well-settled Ninth Circuit law.

2   Even if plaintiff had standing, the Court should nonetheless dismiss the

3   Section 11 claims for all of the grounds the Court did not need to reach when it

4   previously dismissed the Securities Act claims asserted in the Consolidated Class

5   Action Complaint (Dkt. No. 23) (the "Amended Complaint" or "AC") (which claims

6   are substantively identical to those asserted here).  The Section 11 claims based on

7   allegations that the Company's filings with Chinese regulators were inaccurate fail

8   because plaintiff has not adequately alleged falsity and, even if falsity were

9   adequately alleged, the "truth" about those alleged misstatements was never

10   revealed to the market during the putative class period and thus could not have

11   caused his purported loss.

12   Because plaintiff lacks standing, and for the other reasons argued below,

13   plaintiff's Section 11 claims should now be dismissed with prejudice.

14   **STATEMENT OF FACTS**

15   ***The Initial Public Offering***

16   On October 20, 2009, the Company commenced an initial public offering of

17   3,125,000 shares of common stock at $8.00 per share (the "IPO Shares").  (SAC

18   ¶¶ 50-53.)  The IPO Shares were registered and sold by the Company pursuant to a

19   registration statement filed on Form S-1 (Registration No. 333-160343) that was

20   filed with the SEC in June 2009, amended for the final time on October 16, 2009,

21   and declared effective on October 20, 2009 (the "IPO Registration Statement").

22   (Form S-1 (June 30, 2009) ("IPO S-1"), Hibbard Decl. Ex. A; Form S-1/A (Oct. 16,

23   2009) ("IPO S-1/A"), Hibbard Decl. Ex. B; Notice of Effectiveness (Oct. 20, 2009),

24   Hibbard Decl. Ex. C.)[1]  Defendants WestPark and Rodman & Renshaw acted as co-

25   

26   [1]   When deciding a motion to dismiss, a court may consider documents that the
complaint incorporates by reference and take judicial notice of publicly available

27   documents such as SEC filings and publications introduced to indicate what was
in the public realm at a given time.  *See* Defendant ZSTN's Request for Judicial

28   Notice, filed herewith.

1    underwriters of the IPO (together, the "Underwriters").  (SAC ¶¶ 37-38.)  The

2    Company received the proceeds of the IPO, which were intended to, among other

3    things, fund expansion of a new product line.  (IPO S-1 at 6.)

4    ***The Selling Shareholder Registration Statement***

5         Months after the IPO, the Company registered for resale 1,086,400 shares of

6    common stock that were beneficially owned by former shareholders of the Delaware

7    "blank check" company that purchased ZSTN and took it public through a reverse

8    merger (the "Selling Shareholder Offering").  (SAC ¶ 57; Form S-1 (Dec. 31, 2009)

9    ("Selling Shareholder S-1") at 1, 65-67, Hibbard Decl. Ex. D.)  The selling

10   shareholders were Richard Rappaport, WestPark Financial Services, LLC, Anthony

11   Pintsopoulos, Amanda Rappaport Trust, Kailey Rappaport Trust, Kevin DePrimio,

12   and Jason Stern (all of whom are named as defendants in the Second Amended

13   Complaint with the exception of WestPark Financial Services, LLC) (together, the

14   "Selling Shareholders").  (SAC ¶¶ 27, 29-33; Selling Shareholder S-1 at 65-67.)

15   These shares were not owned or sold by ZSTN and, as such, the Company did not

16   receive any proceeds from their resale.  (Selling Shareholder S-1 at 4.)

17        These additional shares were registered and sold pursuant to a separate and

18   independent registration statement filed with the SEC on Form S-1 on December 31,

19   2009 (Registration No. 333-164107), amended for the final time on January 14,

20   2010, and declared effective on January 19, 2010 (the "Selling Shareholder

21   Registration Statement").  (Selling Shareholder S-1; Form S-1/A (Jan. 14, 2010)

22   ("Selling Shareholder S-1/A"), Hibbard Decl. Ex. E; Notice of Effectiveness (Jan.

23   19, 2010), Hibbard Decl. Ex. F.)[2]

24   _____

25   [2]   In the Second Amended Complaint, plaintiff mislabels the Selling Shareholder
     Registration Statement as the "Amended Registration Statement" based on
26   plaintiff's misreading of the Company's SEC filings.  Plaintiff alleges that the
     Selling Shareholder Registration Statement was an amendment to the IPO
27   Registration Statement.  (*See, e.g.*, SAC ¶¶ 56 n.10, 56-59, 98.)  That is
     obviously not the case, as the SEC filings themselves demonstrate.  As explained
28   above, the Selling Shareholder Registration Statement was separate and
     independent from the IPO Registration Statement.  Accordingly, plaintiff's

1    Since the Selling Shareholder Registration Statement was declared effective,

2    Mr. Rappaport has sold a portion of the shares that he beneficially owns.  (Form SC

3    13D/A (Dec. 7, 2011), Hibbard Decl. Ex. J.)[3]

4    ***ZSTN Repeatedly Warns It Is Subject to "Vague and Uncertain" PRC Laws and***
     ***Regulations and that Noncompliance Could Have a Material Effect***

5    In the IPO Registration Statement, ZSTN explained that its "principal

6    operating subsidiary . . . is required to comply with [PRC] laws and regulations."

7    (SAC ¶ 94 (quoting IPO S-1 at 15).)  However, far from assuring investors that it

8    was fully compliant with PRC laws and regulations, ZSTN warned that "***PRC laws***

9    ***and regulations . . . are sometimes vague and uncertain***" and cautioned that ZSTN

10   "cannot predict what effect the interpretation of existing or new PRC laws or

11   regulations may have on our businesses."  (IPO S-1 at 13.)

12   ZSTN also warned investors that "[i]f the relevant [PRC] authorities find [the

13   Company] in violation of PRC laws or regulations, they would have broad

14   discretion in dealing with such a violation," including, without limitation, revoking

15

16

17   allegations should not be treated as true for the purpose of this motion because
     they are contradicted by documents referred to in the Second Amended

18   Complaint and SEC filings that are properly subject to judicial notice.  *See, e.g.*,
     *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

19

20   The plaintiff also mistakenly states that the Selling Shareholder Registration
     Statement was declared effective on January 26, 2011.  (SAC ¶ 57.)  Elsewhere

21   he mistakenly states that it was declared effective on January 19, 2011.  (*Id.*
     ¶ 98.)  As stated above, the Selling Shareholder Registration Statement was

22   declared effective on January 19, 2010.  In at least one instance, plaintiff thus
     appears to have confused the Selling Shareholder Registration Statement with the

23   Company's shelf registration statement that was filed on Form S-3 on January 7,
     2011, amended on January 24, 2011, and declared effective on January 26, 2011.

24   (Form S-3 (Jan. 7, 2011), Hibbard Decl. Ex. G; Form S-3/A (Jan. 24, 2011),
     Hibbard Decl. Ex. H; Notice of Effectiveness (Jan. 26, 2011), Hibbard Decl. Ex.

25   I.)  Although authorized to register and sell many different types of securities,
     ZSTN has not registered or sold any securities pursuant to the shelf registration

26   statement.

27   [3]   In the Second Amended Complaint, plaintiff mistakenly states that the Schedule
     13D was filed on December 12, 2011.  (SAC ¶ 60 n.12.)  That too is incorrect.

28   The Schedule 13D was filed on December 7, 2011.  (Form SC 13D/A (Dec. 7,
     2011).)

DEF ZSTN'S MOT TO DISMISS                                        CASE NO. 11-CV-3531-GAF-JC
SECOND AMENDED COMPLAINT                    4

1   the Company's business license.  (*Id*.)  The Company repeated these warnings in the

2   Selling Shareholder Registration Statement and in its 2009 and 2010 10-Ks.  (*See*

3   Selling Shareholder S-1 at 16; 2009 10-K (Mar. 31, 2010) at 22, Hibbard Decl. Ex.

4   K; 2010 10-K (Mar. 4, 2011) at 21-22, Hibbard Decl. Ex. L.)

5   ***Short Sellers Take Aim at the Company***

6        In late 2010 and 2011, ZSTN was targeted by short sellers seeking to exploit

7   and replicate the successes of others attacking Chinese companies.  For example, on

8   April 21, 2011, Chimin Sang (the "Short Seller"), published an article on the

9   seekingalpha.com website that made a number of allegations about ZSTN's

10  operations and financial condition.  *See* Chimin Sang, *ZST Digital Networks*

11  *Unfolded:  A Mutual Fund Manager Seeks the Truth*, SEEKINGALPHA.COM (Apr. 21,

12  2011), Hibbard Decl. Ex. M.  Among other allegations, the article alleged that

13  ZSTN's SEC filings reported revenues "hundreds of times" of what it reported to

14  the Chinese State Administration of Industry and Commerce (the "SAIC") based on

15  the Company's SAIC filings which were attached to the Short Seller report.  *Id.* at 4.

16  The Short Seller's "high confidence in the authenticity of the SAIC numbers," led

17  him to conclude that the SEC filings were false.  *Id.* at 1.  Following publication of

18  the Short Seller's article, ZSTN's stock price dropped from $4.36 to $2.68.  (SAC

19  ¶¶ 8, 86, 143.)

20      <u>**PROCEDURAL HISTORY AND SUMMARY OF THE ALLEGATIONS**</u>

21       On April 25, 2011, an individual investor named Robert Scott commenced

22  this action.  (Dkt. No. 1.)  After all other candidates – including Mr. Scott –

23  withdrew, the Court appointed Dr. J. Malcolm Gray as the lead plaintiff.  (Dkt. No.

24  18.)  Dr. Gray subsequently filed the Amended Complaint, in which he asserted

25  claims under the Securities Act and the Securities Exchange Act of 1934 (the

26  "Exchange Act") against ZSTN, certain of its officers and directors, the

27  Underwriters and Kempisty based on alleged misstatements made in the IPO

28  Registration Statement, and certain of the Company's quarterly and annual SEC

1  filings.

2      ZSTN, the Underwriters, and Kempisty filed motions to dismiss the Amended

3  Complaint in which they argued the Section 11 claims should be dismissed because,

4  among other things, plaintiff did not properly allege standing.  (Dkt. Nos. 48, 53,

5  57.)  Specifically, defendants argued that plaintiff did not purchase shares in the IPO

6  and could not trace his shares to that offering because plaintiff alleged only that he:

7  (i) "'purchased ZST securities at artificially inflated prices during the Class Period

8  and has been damaged thereby;'" and (ii) brought suit "'on behalf of persons who

9  acquired shares of ZST Securities pursuant or traceable to the Registration

10 Statement in connection with the IPO.'"  *Scott*, 2012 WL 538279, at *14 (quoting

11 AC ¶¶ 11, 29, 61).

12     In an order dated February 14, 2012 (the "Order"), the Court dismissed

13 plaintiff's Securities Act claims for lack of standing.  *Id.* at *13-15.  The Court

14 found that plaintiff had failed to satisfy Section 11's standing requirements because:

15 (i) plaintiff purchased his shares fifteen months after the IPO and thirteen months

16 after the Selling Shareholder Registration Statement was filed; (ii) shares registered

17 by the Selling Shareholder Registration Statement had indeed been sold in the public

18 market before plaintiff bought his shares; and (iii) plaintiff did not plead any facts to

19 show how he could trace the shares he purchased to the IPO.  *Id.* at *14.  The Court

20 gave plaintiff leave to amend his complaint, but instructed plaintiff that he must

21 plead facts that show his shares were purchased in the IPO or could be traced to that

22 offering.  *Id.* at *15.  Because the Court concluded that plaintiff lacked standing to

23 sue under the Securities Act, it did not address alternative arguments for dismissal

24 made by ZSTN, the Underwriters, or Kempisty.  *Id.* at *13.

25     In filing the Second Amended Complaint, plaintiff has not followed the

26 Court's directions.  *Id.* at *15.  Plaintiff has alleged no new facts about his stock

27 purchase and no new facts that demonstrate his purchase can be traced to the IPO.

28 Plaintiff still alleges in wholly conclusory terms that he "purchased ZST Securities

that can be traced to the Registration Statement."  (SAC ¶ 14.)  Plaintiff's only new allegation is the false assertion that the Selling Shareholder Registration Statement is merely an amendment to the IPO Registration Statement.  Plaintiff has lumped these two separate registration statements together and attempts to re-define them as a single registration statement by labeling them collectively as "the Registration Statement."  (*Id.* ¶ 7 n.3.)  Based on that false and misleading description of the documents, plaintiff brazenly asserts that "only one Registration Statement was issued, and therefore all purchases of public ZST stock are traceable to that Registration Statement."  (*Id.* ¶ 14 n.5; *see also id.* ¶ 98.)

Although plaintiff acknowledges that if, the IPO Registration Statement and Selling Shareholder Registration Statement are, in fact, separate and independent, it "make[s] individual tracing to each 'registration statement[]' nearly impossible for purposes of standing under the Securities Act" (*id.* ¶ 7), plaintiff nonetheless claims he has standing because:  (i) the IPO Registration Statement and the Selling Shareholder Registration Statement contain the same alleged misstatements and omissions; and (ii) certain of the defendants had some involvement with both (*id.* ¶¶ 7, 50-60, 98).  Accordingly, plaintiff now bases his Section 11 claims on the Selling Shareholder Registration Statement in addition to the IPO Registration Statement and names as defendants all of the Selling Shareholders (with the exception of WestPark Financial Services, LLC).  (*Id.* ¶¶ 96-101.)

The factual allegations underlying the Section 11 claims in the Second Amended Complaint are otherwise the same as those pled in the Amended Complaint.  (*Compare* SAC ¶¶ 48-95, *with* AC ¶¶ 39-79.)  According to plaintiff, because the SAIC and SEC filings are different, either the financial results reported to the SEC were false (SAC ¶¶ 9, 84-92), or the financial results reported to the SAIC are incorrect.  Therefore, ZSTN:  (i) misrepresented that its operating subsidiary "had been, and would continue to, faithfully comply with its financial reporting obligations to China" and (ii) failed to disclose the existence of material

1    differences between the SAIC and SEC filings (*id.* ¶¶ 9, 93-95).

2    ZSTN now moves for dismissal of plaintiff's Section 11 claims with

3    prejudice.[4]

4                                    **ARGUMENT**

5    **I.    LEGAL STANDARD**

6    A complaint must be dismissed under Rule 12(b)(6) if it does not contain

7    "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.*

8    *v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929 (2007).  A

9    claim is facially plausible only if "the plaintiff pleads factual content that allows the

10   court to draw the reasonable inference that the defendant is liable for the misconduct

11   alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868

12   (2009).  Where the well-pleaded facts do not permit the court to infer more than the

13   "mere possibility" of a right to relief, dismissal is required. *Id.* at 1950.  Evaluating

14   facial plausibility is "a context-specific task that requires the reviewing court to

15   draw on its judicial experience and common sense," and a reviewing court is

16   expected to ignore "mere conclusory statements" and "threadbare recitals of the

17   elements of a cause of action." *Id.* at 1950.

18   Moreover, where, as here, the complaint "employs the exact same factual

19   allegations to allege violations of [S]ection 11 as it uses to allege fraudulent conduct

20   under [S]ection 10(b)" and alleges a "scheme," the Ninth Circuit has instructed that

21   courts must "assume that [the Section 11 claim] sounds in fraud." *Rubke v. Capitol*

22   *Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009).  In order to survive dismissal, a

23   plaintiff must therefore satisfy Rule 9(b)'s requirement and plead the Section 11

24   claim with particularity.  *Id.* at 1156; *see also In re Stac Elecs. Sec. Litig.*, 89 F.3d

25   _____

26   [4]  As stated, *supra*, in ZSTN's Notice of Motion and Motion to Dismiss, ZSTN
     does not reargue for dismissal of plaintiff's claim asserted under Section 10(b)
27   but does incorporate and preserve for appeal all arguments made by ZSTN, the
     Underwriters, and Kempisty with respect to the Section 10(b) claims in their
28   prior motions to dismiss.

1   1399, 1404-05 (9th Cir. 1996).

2   **II.      PLAINTIFF FAILS TO PLEAD STANDING UNDER SECTION 11**

3           Section 11 provides that where a material fact is misstated or omitted from a

4   registration statement, "any person acquiring such security" may bring an action for

5   losses caused by the misstatement or omission.  15 U.S.C. § 77k(a).  Although the

6   phrase "any person" is "broad," "[t]he limitation . . . is that he or she must have

7   purchased 'such security.'"  *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076,

8   1080 (9th Cir. 1999) (quoting 15 U.S.C. § 77k(a)).  In other words, to have standing

9   under Section 11, "the person must have purchased a security issued under that,

10  rather than some other, registration statement."  *Id.*

11          Strict application of the standing requirement under Section 11 is the linchpin

12  of the overall statutory scheme:  "To be able to take advantage of the lower burden

13  of proof and almost strict liability available under § 11, a plaintiff must meet higher

14  procedural standards," the "most significant" of which is the requirement of

15  standing.  *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 496 (5th Cir. 2005) (quotations

16  omitted).[5]  The standing requirement thus distinguishes Securities Act claims from

17  Exchange Act claims.  "The 1934 Act for the most part regulates post-distribution

18  trading."  *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511

19  U.S. 164, 171, 114 S. Ct. 1439, 1445, 128 L. Ed. 2d 119 (1994) (citation omitted).

20  In contrast, "'[t]he 1933 Act is a far narrower statute . . . chiefly concerned with

21  disclosure and fraud in connection with offerings of securities – primarily . . . initial

22  distributions of newly issued stock from corporate issuers.'"  *Gustafson v. Alloyd*

23  _____

24  [5]   *See also, e.g., In re Century Aluminum Co. Sec. Litig.*, 749 F. Supp. 2d 964, 978
        (N.D. Cal. 2010) ("[A]s courts have recognized, because no scienter is required
25      for liability under Section 11 and thus defendants are liable for innocent or
        negligent material misstatements or omissions, its standing provision is
26      narrow."); *Abbey v. Computer Memories, Inc.*, 634 F. Supp. 870, 875 (N.D. Cal.
        1986) ("The 'direct tracing' requirement simply precludes a shareholder from
27      taking advantage of section 11's relaxed liability requirements when the
        shareholder's connection to the relevant offering is so attenuated that he or she
28      cannot directly trace his or her shares to the offering.").

1   *Co.*, 513 U.S. 561, 572, 115 S. Ct. 1061, 1068, 131 L. Ed. 2d 1 (1995) (quoting *Blue*

2   *Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 752, 95 S. Ct. 1917, 1933, 44 L.

3   Ed. 2d 539 (1975)); *Barnes v. Osofsky*, 373 F.2d 269, 271 (2d Cir. 1967) (Section 11

4   "extends only to purchases in the newly registered shares").

5         Standing under Section 11 is simple to demonstrate when the plaintiff

6   purchased "in" or immediately following an initial public offering because, in such a

7   case, the only stock sold to the public by the issuer is pursuant to the allegedly

8   defective registration statement.  *Hertzberg*, 191 F.3d at 1080.  Standing under

9   Section 11 is, however, difficult to establish when the plaintiff purchased in an open

10   market that was composed of stock registered and sold pursuant to more than one

11   registration statement.  *See, e.g.*, *id.* at 1080, 1082; *Barnes*, 373 F.2d at 272-73;

12   *Krim*, 402 F.3d at 498.  This is intentional:  Congress designed the securities laws

13   so that, under most scenarios, the Exchange Act – not the Securities Act – is the

14   source of regulation that governs the purchase and sale of securities in the open

15   market.  *See, e.g.*, *Gustafson*, 513 U.S. at 572.

16         To survive a motion to dismiss, a plaintiff must allege facts showing either

17   that he purchased stock in the offering at issue or that his shares can be traced to the

18   allegedly defective registration statement.  *Scott*, 2012 WL 538279, at *13-14.  As

19   the Court correctly stated in the Order dismissing plaintiff's Section 11 claims,

20   "[d]istrict courts in this circuit addressing the issue have uniformly held that mere

21   boilerplate allegations of traceability are insufficient to establish such standing."  *Id.*

22   at *13.  Rather, "under *Iqbal* and *Twombly*, plaintiffs must allege a factual basis

23   plausibly reflecting that they will eventually be able to submit [] proof" that "their

24   shares were originally sold in the disputed offering."  *Plichta v. SunPower Corp.*,

25   790 F. Supp. 2d 1012, 1023 (N.D. Cal. 2011).[6]  Because plaintiff still fails to allege

---

[6]   In its Order granting ZSTN's motion to dismiss the Section 11 claims, the Court cited *In re SeeBeyond Technologies Corp. Securities Litigation* as an example of where a court in this District was "more liberal in construing Section 11's standing requirements."  *Scott*, 2012 WL 538279, at *13 (citing *SeeBeyond*, 266

such facts, he lacks standing and his Section 11 claims should be dismissed with prejudice.

**A.      Plaintiff Fails to Plead Facts Showing His Shares Can Be Traced Directly to a Particular Registration Statement**

Plaintiff does not allege that he purchased his shares "in" the IPO or directly from the Selling Shareholders.  Rather, plaintiff purchased his shares in the open market following both the IPO and the Selling Shareholder Offering.  *Scott*, 2012 WL 538279, at *13-15.  Plaintiff therefore only has standing to assert a Section 11 claim if he can plead facts showing that his shares are traceable directly to the IPO Registration Statement *or* traceable directly to the Selling Shareholder Registration Statement.  *Id.*  Apparently unable to trace his shares to either registration statement, plaintiff has alleged no facts to support direct tracing.

Instead, plaintiff insists that "only one Registration Statement was issued, and therefore all purchases of public ZST stock are traceable to that Registration Statement."  (SAC ¶ 14 n.5; *see also id.* ¶¶ 7 n.3, 14, 56 n.10, 98.)  This is nothing less than a drastic effort to distort the facts to manufacture a claim.  For example, plaintiff claims that the Form S-1/A filed on October 16, 2009 in connection with ZST's initial public offering (*id.* ¶ 7 n.3) "was later amended on Form S-1/A filed on January 14, 2010" (*id.* ¶ 56 n.10).  Based on that allegation, he refers to the IPO Registration Statement as the "Initial Registration Statement" and the Selling Shareholder Registration Statement as the "Amended Registration Statement," and collectively defines the "Initial Registration Statement" and the "Amended Registration Statement" as *the* "Registration Statement."  (*Id.* ¶ 7 n.3.)

---

F. Supp. 2d 1150 (C.D. Cal. 2003)).  *SeeBeyond* was decided well before *Iqbal* and *Twombly*.  Even if the standard applied in *SeeBeyond* was proper at the time it was decided (which is questionable), *Iqbal* and *Twombly* abrogated that standard.  *See Grand Lodge of Pa. v. Peters*, 550 F. Supp. 2d 1363, 1375-76, 1376 n.78 (M.D. Fla. 2008) (stating that prior decisions permitting plaintiffs to plead standing based on "wholly conclusory" assertions of traceability, such as *SeeBeyond*, cannot be relied on after *Twombly* clarified the pleading standard under Rule 8).

Plaintiff does not merely take these facts out of context – he changes them entirely.  The Form S-1/A filed on October 16, 2009 was the sixth and final pre-effective amendment of the registration statement for the IPO filed on Form S-1 on June 30, 2009.  (*See* IPO S-1/A; IPO S-1.)  The Form S-1/A filed on January 14, 2010 was the first and final pre-effective amendment of the Form S-1 filed on December 31, 2009.  (*See* Selling Shareholder S-1/A; Selling Shareholder S-1.)  The Form S-1/A filed on January 14, 2010 was not, as plaintiff claims, an amendment of the S-1/A filed on October 16, 2009.

Other indisputable facts that plaintiff selectively omitted from the Second Amended Complaint further confirm that the IPO Registration Statement and Selling Shareholder Registration Statement are separate and independent, including, among others:  (i) the SEC assigned the IPO Registration Statement and Selling Shareholder Registration Statement different registration numbers (Registration Nos. 333-160343 and 333-164107, respectively) (*e.g.*, IPO S-1/A; Selling Shareholder S-1/A); (ii) the SEC declared each "effective" on different days (October 20, 2009 and January 19, 2010, respectively) (*e.g.*, Notice of Effectiveness (Oct. 20, 2009); Notice of Effectiveness (Jan. 19, 2010)); and (iii) the Company sold and received the proceeds of the common stock registered in the IPO, while the Selling Shareholders sold and received the proceeds of the common stock registered in the Selling Shareholder Registration (*e.g.*, IPO S-1/A at 4; Selling Shareholder S-1/A at 4).

The documents incorporated by reference in the Second Amended Complaint thus contradict plaintiff's assertion that "only one Registration Statement was issued" (SAC ¶ 14 n.5) and therefore should not be treated as true for the purpose of this motion.  *See, e.g.*, *Sprewell*, 266 F.3d at 988.  Consequently, plaintiff's allegation that he "purchased ZST Securities that can be traced to the Registration Statement" (*id.* ¶ 14) is wholly insufficient to plead traceability.  Indeed, plaintiff's attempt to sweep the two independent and separate registration statements into his defined term "Registration Statement" is nothing less than an exercise in twisting

1   words to mean what plaintiff wishes they meant.

### B.   Alleged Common Misstatements and Omissions Do Not Relieve Plaintiff of His Burden to Plead Standing

Again ignoring the Court's instructions, plaintiff insists the Court should excuse his failure to trace his shares to a particular registration statement because, according to him, the alleged misstatements and omissions are common to both the IPO Registration Statement and the Selling Shareholder Registration Statement. (SAC ¶¶ 7, 56, 58, 124.)[7]  Plaintiff's blatant attempt to rewrite the statute should be no more successful than his attempt to rewrite the facts.

Section 11(a) states unambiguously that:

> In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person *acquiring such security* . . . may, either at law or in equity, in any court of competent jurisdiction, sue . . . .

§ 77k(a) (emphasis added).

Plaintiff attempts to read the phrase "acquiring such security" out of the statute to permit "any person" to sue whenever he or she can plead and prove a misstatement or omission in a registration statement regardless of whether the security he or she acquired was issued pursuant to *that* registration statement.  (SAC ¶¶ 7, 56, 58, 124.)  Plaintiff's broad and self-serving interpretation should be rejected because it contravenes the plain language of the statute.  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253-54, 112 S. Ct. 1146, 1149, 117 L. Ed. 2d 391 (1992)

---

[7]   Plaintiff inaccurately describes the alleged misstatements and omissions as "identical" and repeated "verbatim," (SAC ¶¶ 7, 56, 58, 124).  To the contrary, the Selling Shareholder Registration Statement includes financial statements not included in the IPO Registration Statement.  (*Compare* IPO S-1 at 5, *with* Selling Shareholder S-1 at 5.)

1   ("[C]ourts must presume that a legislature says in a statute what it means and means

2   in a statute what it says there.").  Moreover, "[i]t is a well-established principle of

3   statutory construction that legislative enactments should not be construed to render

4   their provisions mere surplusage."  *United States v. Barazza-Lopez*, 659 F.3d 1216,

5   1220 (9th Cir. 2011) (quotations omitted).

6         Ignoring the limitation imposed by Congress would impermissibly extend

7   Section 11 liability to allow any plaintiff who purchased shares in the open market

8   to sue and thus make liability under Section 11 coextensive with Section 10(b)

9   liability – but without imposing on plaintiffs the requirement that they plead and

10  prove the essential elements of a Section 10(b) claim (scienter, reliance and loss

11  causation), and without requiring plaintiffs to satisfy the heightened pleading

12  requirements Congress imposed when it enacted the Private Securities Litigation

13  Reform Act of 1995.

14        Other provisions of Section 11 support the conclusion that a cause of action

15  exists for any person who purchased a security that was originally registered under

16  the allegedly defective registration statement, but only *so long as* the security was

17  issued under *that* registration statement and not another.  *K Mart Corp. v. Cartier,*

18  *Inc.*, 486 U.S. 281, 291, 108 S. Ct. 1811, 1818, 100 L. Ed. 2d 313 (1988) ("In

19  ascertaining the plain meaning of the statute, the court must look to the particular

20  statutory language at issue, as well as the language and design of the statute as a

21  whole.").  Subsections (e) and (g) define the amount recoverable by reference to the

22  offering price in the particular registration statement pursuant to which a plaintiff's

23  shares were issued.  § 77k(e), (g) (limiting damages that may be recovered to "the

24  price at which the security was offered to the public").  Again, the language chosen

25  by Congress is not merely academic, but is essential to calculate plaintiff's recovery,

26  if any.  Here, the Company offered the IPO Shares at a price of $8.00 per share.

27  (IPO S-1/A at title page.)  The Selling Shareholders, on the other hand, set the

28  maximum offering price at $7.78 per share.  (Selling Shareholder S-1/A at title

1   page.)  Assuming for the sake of argument that plaintiff could state a claim, his

2   damages would depend on whether his shares were issued pursuant to the IPO

3   Registration Statement or the Selling Shareholder Registration Statement.  § 77k(e),

4   (g).  Plaintiff, of course, cannot identify the relevant registration statement, which

5   would render subsections (e) and (g) a nullity for the purpose of calculating

6   damages.

7         Plaintiff's misreading of the statute also contravenes well-settled Ninth

8   Circuit law.  As this Court explained in the Order, while the Ninth Circuit

9   recognized the "problem of proof in a case in which stock was issued under more

10   than one registration statement," it nevertheless instructed that in order to have

11   standing, the plaintiff "must have purchased a security issued under that, rather than

12   some other, registration statement."  *Scott*, 2012 WL 538279, at *13 (quoting

13   *Hertzberg*, 191 F.3d at 1080).[8]  Accordingly, courts in the Ninth Circuit have

14   refused to excuse plaintiffs' failure to trace their shares to a particular registration

15   statement even when the alleged misstatements and omissions are common to more

16   than one offering document.  *See In re Wells Fargo Mortg.-Backed Certificates*

17   *Litig.*, 712 F. Supp. 2d 958, 963 (N.D. Cal. 2010) ("Although plaintiffs have alleged

18   that the Prospectuses and Prospectus Supplements contained some similar false

19   statements or omissions, the case law is clear that a named plaintiff has standing

20   under Section 11 only as to the documents that governed his own purchase of

21   securities."); *Rafton v. Rydex Series Funds*, 2011 WL 31114, at *12 (N.D. Cal. Jan.

22

23   [8]   *See also Barnes*, 373 F.2d at 273 ("[A]n action under § 11 may be maintained
       only by one who comes within a narrow class of persons, i.e. those who purchase

24      securities that are the direct subject of the prospectus and registration
       statement.") (citation omitted); *Lee v. Ernst & Young, LLP*, 294 F.3d 969, 976-77

25      (8th Cir. 2002) ("[W]e read § 11's plain language to state unambiguously that a
       cause of action exists for any person who purchased a security that was originally

26      registered under the allegedly defective registration statement – so long as the
       security was indeed issued under *that* registration statement and not another.");

27      *Joseph v. Wiles*, 223 F.3d 1155, 1159 (10th Cir. 2000) ("[T]he natural reading of
       'any person acquiring such security' is simply that the buyer must have

28      purchased a security issued under the registration statement at issue, rather than
       some other registration statement.").

5, 2011) (finding plaintiff lacked standing even though "the misrepresentations and omissions from the 2007, 2008, and 2009 Registration Statements [were] all part of the same common nucleus of operative fact") (quotations omitted); *see also Abbey*, 634 F. Supp. at 875 ("Section 11 simply was not intended to provide a remedy to every person who might have been harmed by a defective registration statement."). Once again, this Court should rule that plaintiff has failed to allege Section 11 standing.

### C.   Plaintiff Cannot Establish Standing Merely by Pointing Out that Certain Defendants Had Some Involvement with Both Registration Statements

Plaintiff insists he has standing to bring his Section 11 claims even if the IPO Registration Statement and Selling Shareholder Registration Statement are separate and independent simply because certain defendants were involved with both.  (SAC ¶¶ 59-60.)  Plaintiff's third argument for circumventing the traceability requirement should be rejected because it has no support in the law and, for all the reasons explained above, contravenes the plain language in the statute.  Moreover, plaintiff's misreading violates a fundamental precept of Section 11 liability:  that only those persons who participated in an offering can be held strictly liable to purchasers.  *See, e.g.*, *Pub. Emps.' Ret. Sys. of Miss. v. Merrill Lynch & Co. Inc.*, 714 F. Supp. 2d 475, 481 (S.D.N.Y. 2010) ("Liability under Section 11 is strict liability, but this is tempered . . . by the fact that such liability is limited to a defendant" who fits the statutorily-created categories in Section 11(a)).  Here, plaintiff seeks to hold all of the defendants – except for Chen and Na – liable under Section 11 without regard to the role they actually played in the two different registration statements.  For example, Zeng Yun Su signed the IPO Registration Statement, but not the Selling Shareholder Registration Statement.  (*Compare* IPO S-1/A at II-7, *with* Selling Shareholder S-1/A at II-6.)  Westpark and Rodman & Renshaw underwrote the IPO, but not the Selling Shareholder Offering.  (*See generally* IPO S-1/A; Selling

1   Shareholder S-1/A.)  And the Selling Shareholders did not sign the IPO Registration

2   Statement.  (*See generally* IPO S-1/A.)

3         Plaintiff's self-serving interpretation of the statute is further fatally flawed

4   because it ignores that Section 11's standing requirement is designed not only to

5   limit the defendants who may be held liable, but also the shareholders who may

6   recover.  § 77k(a).  Plaintiff's insistence on a broad interpretation would

7   undoubtedly work to his advantage as he apparently cannot trace his shares to either

8   of the two registration statements.  But it would be detrimental to other shareholders

9   who may have standing, because they would be forced to share the amount

10  recovered, if any, with shareholders who – like plaintiff – are not legally entitled to

11  recover anything under the statute.  *See Barnes*, 373 F.2d at 271 (holding that

12  inclusion of shareholders who could not trace their shares directly to a secondary

13  offering would dilute the settlement by allowing recovery by persons who otherwise

14  could not state a viable claim).[9]

15

16

17

18

19

20

21  _____

22  [9]  Plaintiff also appears to suggest that the Court should disregard the fact that the

23  IPO and Selling Shareholder Registration Statements are separate and
    independent because, according to plaintiff, the transactions were intentionally
    structured as independent for the purpose of extinguishing liability under the

24  Securities Act.  (SAC ¶¶ 6-7, 57-58.)  Plaintiff's theory is based on his claim that
    there was no "legitimate impediment" to registering all of the shares in one

25  registration statement.  (*Id.* ¶¶ 57-58.)  That allegation is too conclusory to satisfy
    the pleading standard under Rule 8, let alone the heightened pleading standard

26  under Rule 9(b) that would apply given that plaintiff's claim that ZSTN engaged
    in a fraudulent scheme unquestionably "sounds in fraud."  *See, e.g.*, *Rubke*, 551

27  F.3d at 1161.  In any event, we are not aware of any authority for the proposition
    that courts may, in the name of equity, disregard the statutory standing

28  requirement that Congress legislated in enacting Section 11.

### III. PLAINTIFF FAILS TO STATE A CLAIM BASED ON THE ALLEGED SUBMISSION OF INACCURATE FINANCIAL RESULTS TO CHINESE REGULATORS[10]

Even if the Court were to rule that plaintiff has standing, his Section 11 claims based on allegations that the Company submitted inaccurate information to the PRC government still must be dismissed. According to the Second Amended Complaint, the misstatements in the SAIC filings are actionable because ZSTN: (i) specifically misrepresented that it "had been and would continue to faithfully comply with all Chinese laws," (SAC ¶¶ 9, 94-95); and (ii) failed to disclose that there were material differences between the SAIC and SEC filings (*id.* ¶¶ 9, 93). Both claims fail.

Plaintiff fails to plead a misstatement because he does not – and cannot – point to any place in the offering materials where ZSTN affirmatively represented that it was in compliance with "all Chinese laws." The passage from the offering materials quoted in the Complaint does not say what plaintiff claims. That passage – excerpted from the "risk factor" sections of the offering materials – speaks only to the possibility that an evolving PRC regulatory climate could give rise to noncompliance and the potential penalties to which ZSTN might be subject if PRC regulators determined that the Company had not complied with applicable laws and regulations. (*Id.* ¶ 94.)

---

[10] In its initial motion to dismiss, ZSTN argued that plaintiff's Section 11 claim based on allegedly false SEC filings should be dismissed because plaintiff failed to allege falsity. (ZSTN's Mem. of P. & A. in Supp. of Mot. to Dismiss the Consolidated Compl. ("MTD Br.") 20-21 (Dkt. No. 57).) ZSTN specifically argued that the only fact on which plaintiff relies to plead his claim – the existence of differences between ZSTN's SAIC and SEC filings – does not give rise to "more than a sheer possibility" that ZSTN overstated its financial results to the SEC. *Iqbal*, 129 S. Ct. at 1949, 1951. Because the Court stated in the Order that plaintiff's allegations of falsity were sufficient, ZSTN does not reargue that point here. Instead, the Company incorporates and preserves for appeal all arguments with respect to plaintiff's failure to plead falsity in support of his Section 11 claim that ZSTN, the Underwriters, and Kempisty made in their prior motions to dismiss.

---

1    Plaintiff also cannot plead an actionable omission based on the Company's

2 purported failure to disclose that the financial statements it filed with the SAIC

3 differed materially from those it filed with the SEC.  An omission is misleading only

4 if it "affirmatively create[s] an impression of a state of affairs that differs in a

5 material way from the one that actually exists."  *Brody v. Transitional Hosps. Corp.*,

6 280 F.3d 997, 1006 (9th Cir. 2002); *see also Rubke*, 551 F.3d at 1162-63 (affirming

7 dismissal where the alleged omissions in the registration statement did not render it

8 misleading).  The purported nondisclosure of the fact that the Company's SAIC

9 filings were inaccurate did not create the false impression that ZSTN had complied

10 with all PRC laws and regulations.  As explained above, the Company made no

11 representation – implied or otherwise – that it had complied with all PRC laws and

12 regulations.  *See Philco Inv., Ltd. v. Martin*, 2011 WL 4595247, at *5 (N.D. Cal.

13 Oct. 4, 2011) (granting dismissal of a Section 10(b) claim when a press release

14 about a drug trial contained both positive and negative information, and therefore

15 did not affirmatively create an impression that the further, undisclosed adverse

16 results did not exist); *see also In re FoxHollow Techs., Inc. Sec. Litig.*, 2008 WL

17 2220600, at *22-26 (N.D. Cal. May 27, 2008) (granting dismissal of a Section 10(b)

18 claim because statements supporting management did not affirmatively create an

19 impression that management would be retained, and the company never stated that it

20 would keep management intact).  Plaintiff's Section 11 claims based on false SAIC

21 filings must therefore be dismissed.

22

23

24

25

26

27

28

## IV.   THE COMPLAINT AFFIRMATIVELY ESTABLISHES THAT THE ALLEGED MISSTATEMENTS AND OMISSIONS DID NOT CAUSE PLAINTIFF'S LOSS[11]

While loss causation is not an element of a Section 11 claim, Section 11 provides an affirmative defense barring recovery if a defendant shows that the alleged misstatement did not cause plaintiff's loss.  § 77k(e).  Section 11 claims are dismissed where, like here, "negative causation" is apparent from the face of the complaint and judicially noticeable documents.  *See, e.g.*, *Hildes v. Anderson*, 2010 WL 2836769, at *3 (S.D. Cal. July 19, 2010) (granting dismissal of Section 11 claims where the complaint and stock purchase agreement showed that the purported loss was not caused by the alleged misrepresentation).

Plaintiff seeks to recover the stock price drop that followed a single event – the April 21, 2011 posting of the Short Seller's article.  (SAC ¶¶ 8, 84, 86.)  But the Short Seller's article did not reveal that the SAIC filings were inaccurate.  In fact, the Short Seller expressly ruled out that exact possibility by stating his view that the SEC filings were false.  *See supra* at 5.  Since the Short Seller article did not claim that ZSTN's financial results reported to the SAIC were understated, any stock price drop following its posting cannot be attributed to the alleged misstatements or omissions related to the SAIC filings.  *See, e.g.*, *In re Britannia Bulk Holdings Inc. Sec. Litig.*, 665 F. Supp. 2d 404, 419-20 (S.D.N.Y. 2009) (granting dismissal where disclosure on which the plaintiff relied "simply [did] not state what Plaintiff

---

[11] In its initial motion to dismiss, ZSTN argued that plaintiff's Section 11 claim based on allegedly false SEC filings should be dismissed because plaintiff purchased his stock after the differences between the Company's U.S. and Chinese filings were disclosed to the market in a short seller report published on seekingalpha.com and therefore could not have suffered a loss when that same information was discussed in a second short seller report published on that same website six months later.  (MTD 24-25.)  Because the Court stated in the Order that plaintiff's allegations were plausible for the purpose of pleading loss causation with respect to the Section 10(b) claim, ZSTN does not reargue that point here with respect to the Section 11 claim.  Instead, the Company incorporates and preserves for appeal all arguments with respect to the negative causation argument it made in its prior motion to dismiss.

claim[ed]" because it did not "reveal to the market the falsity" of the registration statements) (citation omitted); *Amorosa v. Ernst & Young LLP*, 682 F. Supp. 2d 351, 370-72 (S.D.N.Y. 2010) (granting dismissal where the purported corrective disclosure did not reveal the "truth" regarding any alleged misstatement to the market).

## V.  THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND

A district court's "discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1072 (9th Cir. 2008). Specifically, courts may deny leave to amend due to, among other things, plaintiff's "failure to cure deficiencies by amendments previously allowed . . . [and] futility of amendment." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).

Here, the Court identified a particular deficiency, yet plaintiff has failed to remedy it. Plaintiff's repeated failure to plead standing indicates he cannot allege additional facts. *Id.* at 1007 (finding that the failure "to correct . . . deficiencies in [a] Second Amended Complaint is 'a strong indication that the plaintiffs have no additional facts to plead'") (citation omitted). Moreover, plaintiff has all but conceded that he cannot plead any such facts. (SAC ¶ 7.) Thus, further amendment of the pleadings would be futile. *See In re Century Aluminum Co. Sec. Litig.*, 2011 WL 830174, at *1, 8 (N.D. Cal. Mar. 3, 2011) (dismissing the complaint with prejudice where plaintiffs were granted leave to amend specifically to plead facts showing that they could trace their shares, but failed to do so); *In re Exodus Commc'ns, Inc. Sec. Litig.*, 2006 WL 1530081, at *2-3 (N.D. Cal. June 2, 2006) (dismissing the complaint with prejudice where plaintiff had failed, after repeated direction from the court, to submit facts showing he could trace his shares to the defective registration statement).

What is more, plaintiff, who is represented by experienced counsel, has had

ample time to investigate the claims asserted, and indeed, three different iterations of the complaint have been submitted over nearly the past year.  If plaintiff's counsel had adequate facts to allege proper tracing, no doubt those facts would have been pled.  *See Teamsters Local 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 2011 WL 1253250, at *37 (D. Ariz. Mar. 31, 2011) (refusing to allow leave to amend where the plaintiff was "represented by experienced counsel who routinely practice in the area of securities class action litigation" and "were given ample opportunity to file an amended complaint addressing [the] courts concerns").  The Ninth Circuit routinely upholds district court decisions to deny leave to amend where, as here, the plaintiff has had ample opportunity to make his best case, but has nevertheless failed to satisfy his pleading burden.  *Zucco*, 552 F.3d at 1007 ("[T]he district court did not err when it dismissed the [complaint] with prejudice, since it was clear that the plaintiffs had made their best case and had been found wanting."); *Metzler Inv.*, 540 F.3d at 1072 ("[P]laintiff point[ed] to no additional facts that it might allege to cure the[] deficiencies, which persisted in every prior iteration . . . .").  Accordingly, plaintiff's Section 11 claims should now be dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, ZSTN respectfully requests that the Court grant, with prejudice, the Company's motion to dismiss the Section 11 claims asserted in the Second Amended Complaint.

Dated:  April 27, 2012                    SHEARMAN & STERLING LLP


                                          /s/ Stephen D. Hibbard
                                          Stephen D. Hibbard (SBN 177865)
                                          Four Embarcadero Center, Suite 3800
                                          San Francisco, CA  94111
                                          Telephone:  (415) 616-1100
                                          Facsimile:  (415) 616-1199
                                          Email:  shibbard@shearman.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Of Counsel:*

Christopher R. Fenton (*pro hac vice*)
Edward G. Timlin (*pro hac vice*)
Andrew J. Rodgers (*pro hac vice* pending)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY  10022
Telephone:  (212) 848-4000
Facsimile:  (212) 848-7179
Email:  christopher.fenton@shearman.com
Email:  edward.timlin@shearman.com
Email:  andrew.rodgers@shearman.com

*Attorneys for Defendant*
*ZST Digital Networks, Inc.*