GLANCY BINKOW & GOLDBERG LLP
Lionel Z. Glancy, Esq. (SBN 134180)
Michael Goldberg, Esq. (SBN 188669)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
E-mail: info@glancylaw.com

MURRAY FRANK LLP
Marvin L. Frank (*pro hac vice*)
Benjamin D. Bianco (*pro hac vice*)
Gregory A. Frank (*pro hac vice*)
275 Madison Avenue, Suite 801
New York, New York 10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892
Email: mfrank@murrayfrank.com

*Counsel for Lead Plaintiff and the Class*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT SCOTT, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> ZST DIGITAL NETWORKS, INC., et al., <br><br> Defendants. | Case No. 11-CV-03531-GAF (JCx) <br><br> **PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS' TO DISMISS THE AMENDED COMPLAINT** <br><br> Date:   August 6, 2012 <br> Time:   9:30 a.m. <br> Crtm:   740 <br> Judge:  Hon. Gary A. Feess |

PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................... 1

PRELIMINARY STATEMENT ................................................................ 2

SUMMARY OF ALLEGATIONS ............................................................ 4

ARGUMENT ........................................................................................... 5

    I.    Securities Act Claims ................................................................... 5

        A.    The Amended Complaint States Claims For
               Violations Of Section 11 Of The Securities Act ................... 5

        B.    Shares Must Be Traceable To Be Actionable ........................ 6

        C.    All Publically Traded ZST Stock Comes From A Single
               Issuance ................................................................................. 6

             1.    The Scheme ................................................................ 7

             2.    There Was "One Integrated Offering" ........................ 8

             3.    The Sole Purpose of The WRASP Process Is To
                   Avoid Liability ......................................................... 10

             4.    Defendants' Scheme Should Not Be Allowed ............ 12

        D.    The Claims Against Rodman Are Not Subject To
               Rule 9(b) ............................................................................. 12

        E.    Rodman's Due Diligence Defense Must Await Summary
               Judgment ............................................................................. 14

    II.    Securities Exchange Act Claims .................................................. 15

PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

I

A.    WestPark Is Liable Under Section 10(b) For Making Materially False And Misleading Statements With Scienter................................................................. 15

    1.    WestPark Made Materially False and Misleading Statements In The Offering Documents ..................... 17

    2.    WestPark Made Its False Statements With Scienter... 20

    3.    Lead Plaintiff Relied Upon WestPark's False And Misleading Statements In The Offering Documents................................................................. 22

B.    WestPark Is Liable Under Rules 10b-5(a) and/or (c) ........... 23

C.    The Amended Complaint Adequately Alleges That The Registration Statement Was Materially False and Misleading................................................................. 24

D.    ZST Cannot, On A Motion To Dismiss, Meet Its Burden Of Proving Negative Causation ................. 25

III.    Should The Court Dismiss The Amended Complaint, Lead Plaintiff Should Be Granted Leave To Amend.............................. 26

PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

II

# TABLE OF AUTHORITIES

**Page**

**Rules and Statutes**

Fed. R. Civ. P. 15(a)(2) ................................................................. 26, 27

Fed. R. Civ. P. 8(a) ........................................................................ 12, 13, 14

Fed. R. Civ. P. 9(b) ....................................................................... 13, 14, 16

Securities Act of 1933, Section 11 .................................................. 5, 13

Securities Exchange Act of 1934, Rule 10b-5 .................................. 23

Securities Exchange Act of 1934, Section 10(b) ............................. 13, 15, 17, 18

**Cases**

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ............................................................. 25

*Berson v. Applied Signal Tech., Inc.*,
    527 F.3d 982 (9th Cir. 2008) ................................................... 25

*Brody v. Transitional Hosp's Corp.*,
    280 F.3d 997 (9th Cir. 2002) ................................................... 25

*City of Los Angeles v. AT & T Mobility LLC*,
    No. 11-06995, 2012 WL 171680 (C.D. Cal. Jan. 20, 2012) .......... 27

*City of Rosevill Employees' Retirement System v. EnergySolutions, Inc.*,
    814 F. Supp. 2d 395 (S.D.N.Y. 2011) ....................................... 19

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005) ................................................................ 13

PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

III

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Eminence Capital, LLC v. Aspeon, Inc.,*
   316 F.3d 1048 (9th Cir. 2003)...........................................................................27

*Ernst & Ernst v. Hochfelder,*
   425 U.S. 185 (1976)...........................................................................................23

*Foman v. Davis,*
   371 U.S. 178 (1962)...........................................................................................27

*Hertzberg v. Dignity Partners, Inc.,*
   191 F.3d 1076 (9th Cir. 1999)....................................................................6, 10

*In re Allstate Life Insurance Co. Litig.,*
   No. 09-8162, 2012 WL 1764497 (D. Ariz. Jan. 23, 2012).......................16, 19

*In re Countrywide Financial Corp. Sec. Litig.,*
   588 F. Supp. 2d 1132 (C.D. Cal. 2008)..............................................13, 14, 26

*In re Daou Systems, Inc.,*
   411 F.3d 1006 (9th Cir. 2005)....................................................................13, 24

*In re Enron Corp. Sec., Derivative & ERISA Litig.,*
   No. MDL-1446, Civ. A. H-01-3624,
   2005 WL 3704688 (N.D. Tex. Dec. 5, 2005)...................................................15

*In re Friedman's, Inc. Sec. Litig.,*
   385 F. Supp. 2d 1345 (N.D. Ga 2005) ...........................................................15

*In re Homestore.com, Inc. Sec. Litig.,*
   347 F. Supp. 2d 790 (C.D. Cal. 2004)............................................................21

*In re Medicis Pharmaceutical Corp. Sec. Litig.,*
   No. 08-821, 2010 WL 3154863 (D. Ariz. Aug. 9, 2010) ...............................22

*In re National Century Financial Enterprises, Inc.,*
   No. 03-1565, 2012 WL 685495 (S.D.N.Y. March 2, 2012).......................17, 19

*In re Prestige Brands Holding, Inc.,*
   No. 05-6924 (CLB), 2006 WL 2147719 (S.D.N.Y. July 10, 2006) ...............15

PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

IV

*In re SeeBeyond Technologies Corp. Sec. Litig.*,
  266 F. Supp. 2d 1150 (C.D. Cal. 2003) ............................................................ 6

*In re Stac Elecs. Sec. Litig.*,
  89 F.3d 1399 (9th Cir. 1996) ........................................................................ 13

*In re Washington Mutual Inc. Sec. Litig.*,
  259 F.R.D. 490 (W.D. Wash. 2009) ......................................................... 12, 14

*Janus Capital Group, Inc. v. First Derivative Traders*,
  131 S. Ct. 2296 (2011) ............................................................................ 17, 19

*Katz v. China Century Dragon Media, Inc. et al.*,
  No. 11-02769-JAK (C.D. Cal. Nov. 30, 2011) ................................................. 3

*Koehler v. Pulvers*,
  614 F. Supp. 829 (S.D. Cal. 1985) ................................................................ 10

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
  416 F.3d 940 (9th Cir. 2005) ........................................................................ 16

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
  No. 10 -0302, 2011 WL 4389689 (C.D. Cal. May 5, 2011) .............................. 6

*Mandosia v. Soros*,
  No. 11-1352, 2011 WL 836642 (C.D. Cal. Mar. 4, 2011) ............................. 26

*Morongo Band of Mission Indians v. Rose*,
  893 F.2d 1074 (9th Cir. 1990) ...................................................................... 26

*Nesbit v. McNeil*,
  896 F.2d 380 (9th Cir. 1990) ........................................................................ 12

*New Mexico Inv. Council v. Ernst & Young LLP*,
  641 F.3d 1089 (9th Cir. 2011) ...................................................................... 20

*Nursing Home Pension Fund, Local 144 v. Oracle Corp.*,
  380 F.3d 1226 (9th Cir. 2004) ...................................................................... 16

PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

*O. Currie v. Cayman Resources Corp.*,
  595 F. Supp. 1364 (N.D. Ga. 1984) ............................................................ 9, 10

*Plichta v. SunPower Corp.*,
  No. 09-5473, 2011 WL 1873310 (N.D. Cal. Mar. 1, 2011) ........................... 10

*Randall v. Loftsgaarden*,
  478 U.S. 647 (1986) ....................................................................................... 12

*S.E.C. v. Lyttle*,
  538 F.3d 601 (7th Cir. 2008) ......................................................................... 17

*S.E.C. v. Mercury Interactive, LLC*,
  No. 07-2822, 2011 WL 5871020 (N.D. Cal. Nov. 22, 2011) ......................... 23

*S.E.C. v. Murphy*,
  626 F.2d 633 (9th Cir. 1980) ................................................................. 9, 10, 12

*Swanson v. U.S. Forest Serv.*,
  87 F.3d 339 (9th Cir. 1996) ........................................................................... 26

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ................................................................................. 16, 20

*United Hous. Found., Inc. v. Forman*,
  421 U.S. 837 (1975) ....................................................................................... 12

*Vess v. Ciba–Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ....................................................................... 13

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
  655 F.3d 1039 (9th Cir. 2011) ....................................................................... 23

*Zucco Partners, LLC v. Digimarc Corp.*,
  552 F.3d 981 (9th Cir. 2004) ......................................................................... 21

PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

**INTRODUCTION**

This Court has previously held that Lead Plaintiff J. Malcolm Gray's ("Lead Plaintiff") allegations against ZST Digital Networks, Inc. ("ZST" or the "Company") concerning violations of the Securities Exchange Act of 1934 (the "Exchange Act") sufficiently stated a claim, holding that "the marked disparity between the revenue figures reported to American and Chinese regulatory bodies, along with the Company's subsequent and ambiguous explanation of those discrepancies, the strong inference that the Chinese statement reflected an overstatement in revenues reported to the SEC are sufficient to constitute falsity and scienter under the PSLRA." [1]   The Court dismissed Lead Plaintiff's Exchange Act claims against Defendant Kempisty for failure to allege Kempisty's knowledge of Chinese SAIC reports, but granted leave to amend.[2] The Court also dismissed all of Lead Plaintiff's claims under the Securities Act of 1933 (the "Securities Act"), holding that Lead Plaintiff needed to plead facts showing his shares can be traced, but granted leave to amend.[3]

The Amended Complaint was filed March 9, 2012 [Docket No. 94].  The crux of Lead Plaintiff's Amended Complaint is that there is only one integrated offering consisting of the Registration Statement declared effective on October

---

[1]  Court's Order Re: Motions to Dismiss, entered on February 15, 2012 (the "Order") [Docket No. 93], at 1-15.

[2]  Order at 13-14.  Defendant Kempisty filed its Notice of Joinder and Joinder of Co-Defendants Motions to Dismiss The Second [sic] Amended Class Action Complaint/Amended Class Action Complaint on May 11, 2012 [Docket No. 131] ("Kempisty's Br."), adopting the arguments of Defendants ZST, WestPark, and Rodman.  Lead Plaintiff's brief, herein, applies equally to Kempisty. Kempisty has abandoned any argument that it lacked knowledge of the SAIC filings.

[3]  Order at 16-19.

PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

1

20, 2009,[4] in connection with ZST's initial public offering, along with its *amendment* a few months later.  The Defendants cleverly attempted to style the amendment as a completely new registration statement in order to avoid Section 11 liability for the materially false and misleading statements contained therein. The Amended Registration Statement[5] duplicates the information (including the materially false and misleading statements of the Initial Registration Statement) and provides no economic benefit or rational purpose other than to avoid liability.   Indeed, there are ***not*** two totally separate and distinct registration statements as Defendants argue.

## PRELIMINARY STATEMENT

Contrary to Defendant WestPark's duty as an underwriter to act as a gatekeeper protecting the securities markets, WestPark conceived of and implemented a financial scheme it named the "revolutionary WRASP Process;" the sole purpose of which was to insulate WestPark and its issuers from liability under the Section 11 for making materially false and misleading statements in a registration statement.  (¶¶ 36, 139.)[6]

---

[4] Hereinafter, the "Initial Registration Statement."

[5] The "Amended Registration Statement" refers to the second set of documents filed with the SEC, culminating in a Form S-1/A filed by ZST on January 14, 2010 and declared effective on January 26, 2010.

[6]   All "¶_" references are to the corresponding paragraphs in the Amended Complaint.   "ZST's Br.," "Rodman's Br.," and "WestPark's Br." refer, respectively, to that defendant's memorandum of law in support of its motion to dismiss, filed April 27, 2012 (Docket Nos. 120, 124, and 125).   Defendants Richard Rappaport, Anthony Pintsopoulos, Kevin Deprimio, Jason Stern, The Amanda Rappaport Trust, and the Kailey Rappaport Trust moved to dismiss the complaint in a separate brief filed on June 1, 2012.  Lead Plaintiff will address that motion in a separate opposition brief, due to be filed by July 13, 2012. Defendants Zhong Bo, John Chen, Zeng Yun Su, Zhong Lin, Xue Na, Yang Ai

PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

2

The WRASP Process is "revolutionary" precisely because it breaks an IPO into two identical registration statements. Under this scheme, the purportedly *second* "offering" is filed mere months after the first, with the *second* being a carbon copy of the first—providing no economic benefit to the issuer. (¶¶7, 58.) WestPark knows, however, that through the inherent churn of the securities markets, by the time the fraud is discovered, few if any investors could match their shares to one specific offering document.[7]  Moreover, WestPark and the issuer, here ZST, can then argue that investors cannot point to which registration statement is connected to which publicly-traded shares.

Thus, even though both registration statements contain identical falsities (¶¶6, 7), Defendants can claim they are shielded from liability because of the superficial differences between the two sets of documents, *i.e.*: (i) the "different registration numbers"; (ii) the fact that "the [Securities and Exchange Commission ('SEC')]" declared each 'effective' on different days"; and (iii) the Company sold and received the proceeds of the common stock registered in the IPO, while WestPark sold and received the proceeds of the identical common stock sold pursuant to the Amended Registration Statement.  ZST's Br. at 12.

Here, Defendants provide no coherent (much less legitimate) explanation of the reasoning behind the sequential duplicate registration statements.  Of course, Defendants cannot because there is simply *no* logical reason for submitting two identical registration statements to the SEC *other* than as a

---

Mei, Tian Li Zhi, Sheng Yong, and Liu Hui Fang have not entered an appearance in this action.

[7]  This scheme is currently being litigated in connection with multiple alleged frauds in this District. See, e.g., *Katz v. China Century Dragon Media, Inc. et al.*, No. 11-02769-JAK (C.D. Cal. Nov. 30, 2011).

PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

3

means to avoid liability.[8]  Indeed, the refusal to register shares from the second registration statement as part of the first brings no economic benefits to anyone; and in the private placement context courts in this Circuit have held such defendants accountable.

## SUMMARY OF ALLEGATIONS

ZST is a company that supplies digital and optical network equipment to cable system operators in the Henan Province of China.  (¶¶15, 49, 118.)  As a Chinese entity publically traded in the United States, ZST has financial reporting obligations to both the SEC and the SAIC, the regulatory agency covering all business enterprises in China.  (¶¶1, 49, 88.)

Like the SEC, the SAIC requires that a company's financial reports be professionally-audited and certified as truthful.  (¶¶3, 64, 65, 121.)  Although there is some disparity between Chinese accounting methodology and U.S. accounting standards, the fundamental financial results reported to each agency should bear a rational relationship to each other.  (¶64 n.14.)  Nevertheless, ZST maintained two materially disparate sets of financial records, one for reporting financial results in the United States to the SEC, and the other for reporting financial results in China to the SAIC.  (¶¶1, 84, 143.)  Indeed, ZST dramatically overstated its top-line revenue figures (and all results derived therefrom) in each and every financial report filed with the SEC (when compared to the Company's SAIC filings) during the Class Period.  (¶¶4, 92, 147.)

Specifically, comparison of the SEC and SAIC filings revealed that ZST's revenue, net income, and tax figures reported in both registration statements filed with the SEC were materially misstated because: (i) ZST's revenue for fiscal-year 2008 was only $20,000, not $55.4 million; (ii) ZST's net income for

---

[8] Such is obvious by the fact that this two-step registration process is highly unusual in American securities markets.

PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

4

fiscal-year 2008 was actually a $130,000 loss, not a $6.1 million profit; (iii) ZST paid no taxes in 2008, even though the Company misstated that it paid over $2.1 million; (iv) ZST's revenue for the first six months of fiscal-year 2009 was no more than $250,000, not $41.4 million; (v) ZST's net income for the first six months of fiscal-year 2009 was actually a loss of up to $360,000, not a $3.8 million profit; and (vi) ZST paid no taxes for the first six months of fiscal-year 2009, even though the Company misreported that it paid nearly $1.5 million. (¶¶92, 147.)

On April 21, 2011, when the truth was revealed that ZST had been maintaining two sets of materially divergent financial records, ZST's stock price dropped from **$4.36** per share, to a closing price of **$2.68** per share, a decline of almost **40 percent** in one day.  (¶¶8, 86, 143.)

## ARGUMENT

## I.   Securities Act Claims

This Section addresses Defendants' motions to dismiss Lead Plaintiff's Securities Act claims, specifically this Section responds to ZST's Br. §§ II and III, WestParks' Br. § I, and Rodman's Br. §§ 1 and 2.

### A.   The Amended Complaint States Claims For Violations Of Section 11 Of The Securities Act

The Amended Complaint adequately alleges claims under Section 11 of the Securities Act.[9]  The Securities Act claims are asserted against the ZST Defendants, WestPark, and Rodman that sold the stock to members of the Class,

---

[9]  Section 11 provides a private cause of action against issuers, underwriters, auditors and all persons signing a registration statement that "contain[s] an untrue statement of a material fact or omit[s] to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a).

and Defendant Kempisty who consented to its audit opinion appearing in the Registration Statement.

Defendants' primary, if not sole, argument is that that Lead Plaintiff has not pleaded that his shares are traceable to a specific registration statement. Lead Plaintiff alleges that Defendants schemed **all along** to register **all** outstanding shares of ZST common stock for public sale in a single public offering under a single registration statement, and that they split this registration statement into two sets of documents for the purpose of making the exact arguments they make now.

## B.   Shares Must Be Traceable To Be Actionable

To have standing to sue for a claim under Section 11, a shareholder must have purchased the relevant security "pursuant and/or traceable to" the allegedly false registration statement. *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, No. 10 -0302, 2011 WL 4389689, at *11 (C.D. Cal. May 5, 2011); 15 U.S.C. § 77k(a). A plaintiff must be able to demonstrate that a later purchased share was originally issued and sold as part of a particular offering. *In re SeeBeyond Technologies Corp. Sec. Litig.*, 266 F. Supp. 2d 1150, 1171 (C.D. Cal. 2003).

Where, however, all of the publicly available stock comes from a single issuance a plaintiff must only plead facts demonstrating that he purchased the stock in the public markets prior to the corrective disclosure. *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1082 (9th Cir. 1999) ("[A]ll the stock ever publicly issued by Dignity was sold in the single offering at issue in this case. The difficulties of tracing stock to a particular offering present in some cases are thus not present here.").

## C.   All Publically Traded ZST Stock Comes From A Single Issuance

Lead Plaintiff alleges that ZST had a single public initial offering, under a single integrated registration statement and, accordingly, all publicly available

PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

6

shares of ZST stock are traceable to that Registration Statement, including those purchased by Lead Plaintiff.[10]  The Securities Act simply does not contemplate the filing of sequential duplicate registration statements for the sole purpose of avoiding liability under the Act.[11]

### 1.   The Scheme

Defendants first conceived of their scheme in 2007, when ZST enlisted WestPark to employ its WRASP Process to sell ZST common stock in the United States.  The first step in this WRASP Process was for WestPark to engineer a reverse-merger between ZST and an American shell company. (¶¶36, 83.)  As a result of this reverse merger, Defendant Rappaport, CEO of WestPark, was named as a Chief Executive Officer and a Director of ZST in 2007 and 2008. (¶83.)  ZST compensated WestPark for this part of the process with ZST securities, which were later converted into 806,408 shares of ZST common stock on January 9, 2009 (the "Reverse Merger Shares"). (¶54.)  Defendant Rappaport redistributed those shares from WestPark to his employees, Defendants Pintsopoulos, DePrimio, and Stern, as well as to his children, through the Amanda Rappaport Trust and Kailey Rappaport Trust. (¶¶29-33.)

Importantly, ZST and WestPark, through Rappaport, had conceived of their fraud as a single scheme, from reverse merger, all the way through selling

---

[10]   ZST argues since certain defendants appear on one set of documents and not on another, they must be two separate registration statements.  *See* ZST's Br. at 16-17.  However, Lead Plaintiff alleges that both documents were conceived of and drafted contemporaneously, as the scheme was planned and executed. (¶¶36, 54-60.)  Thus, any differences in the parties underlying the two documents are merely a contrivance of Defendants' scheme.

[11]   Defendants have misread Lead Plaintiff's Amended Complaint.  Lead Plaintiff does not allege that he does not have to trace his shares, but that he has traced them—to a single integrated document.  *See* ZST's Br. at 13-16.

PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

7

shares to the public securities markets.  Pursuant to the terms of the reverse merger, the Company agreed to later register the 1,194,380 shares of outstanding Common stock and the 170,629 shares of Common stock underlying the warrants held by the Company's stockholders for public sale.  (¶54 n.8.)

Against securities industry common practice, the Company registered the Reverse Merger Shares as part of a two-step process.  The Company first registered the bulk of the Reverse Merger Shares as part of the Initial Registration Statement.  Only the shares affiliated with WestPark, worth only 6% of the total, (¶83 n.25), were not offered for sale.[12]  The Initial Registration Statement specifically referred to the subsequent registration of the WestPark Shares.[13]  As a result, only two months after the first step of the IPO, on December 31, 2009, Defendants began submitting the materially identical second set of ZST documents for registration of the WestPark shares for public sale, culminating in the Amended Registration Statement, which finally registered the previously issued WestPark shares.

## 2.   There Was "One Integrated Offering"

Although Defendants cite to numerous cases involving tracing to one of multiple registration statements, none of those cases involved allegations that the defendants had bifurcated an IPO into sequential, duplicate registration statements to render traceability impossible.  Nor do Defendants' cases involve sequential

---

[12]   Specifically, the shares were held by WestPark Financial Services, LLC; Defendant Richard Rappaport; Defendant Amanda Rappaport Trust and Defendant Kailey Rappaport Trust, whose beneficiaries are Richard Rappaport's children; and Anthony Pintsopoulos, Kevin DePrimio, and Jason Stern, all of whom were affiliated with WestPark (the "WestPark Shares").

[13]   Initial Registration Statement at 20: "950,606 shares of common stock and 135,803 shares of common stock underlying warrants will be included in a subsequent registration statement filed by us."

PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

8

duplicate registration statements filed, and designed to be filed, so close to each other in time.

In the parallel context of private placements, the Ninth Circuit has endorsed the SEC's five factor test to "determin[e] whether to consider apparently separate offerings as one integrated offering." *S.E.C. v. Murphy*, 626 F.2d 633, 645 (9th Cir. 1980); *see also O. Currie v. Cayman Resources Corp.*, 595 F. Supp. 1364, 1376-77 (N.D. Ga. 1984) (applying the *Murphy* test to determine whether purportedly multiple offerings were one integrated offering for purposes of the Securities Act). Where multiple purported private placements are considered an integrated offering, the offering is considered a public offering, not a private placement. *Murphy*, 626 F.2d at 646. The factors are:

> (a) [W]hether the offerings are part of a single plan of financing; (b) whether the offerings involve issuance of the same class of securities; (c) whether the offerings are made at or about the same time; (d) whether the same kind of consideration is to be received; and (e) whether the offerings are made for the same general purposes.

626 F.2d at 645.

Here, all five of the *Murphy* factors weigh in favor of finding a single, integrated offering. First, it is important to remember that **all** ZST shares can be traced back to a single class of ZST common stock that existed in 2008. The choice to designate certain of the Reverse Merger Shares differently than others served no economic purpose whatsoever, and was purely artificial. (¶¶54, 55.) Thus all common shares were of the same class of securities, and were issued, and later sold into the public marketplace for the same purpose—a single plan of financing. *Murphy*, 626 F.2d at 646; *Koehler v. Pulvers*, 614 F. Supp. 829, 841

PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

9

(S.D. Cal. 1985); *O. Currie*, 595 F. Supp. at 1377.  Second, the offerings were made within months of each other.  *See Koehler*, 614 F. Supp. at 841 (offering integrated where securities sold between April and December of 1980).   All offerings rendered the registered securities eligible for the same cash consideration. *Murphy*, 626 F.2d at 646. Finally, all of the securities offered were made for the same general purpose—taking ZST public.[14]

### 3.  The Sole Purpose of The WRASP Process Is To Avoid Liability

Purchasers of common stock normally demonstrate standing by one of two ways: (1) by demonstrating he bought directly on the offering and held those securities until the truth was revealed; or (2) by demonstrating that his shares can be traced to the offering, usually by demonstrating that the only publicly available shares in the marketplace at the time of his purchase were traceable to that offering.  *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1082 (9th Cir. 1999) ("[A]ll the stock ever publicly issued by Dignity was sold in the single offering at issue in this case.  The difficulties of tracing stock to a particular offering present in some cases are thus not present here."); *Plichta v. SunPower Corp.*, No. 09-5473, 2011 WL 1873310, at *10-11 (N.D. Cal. Mar. 1, 2011).

Obviously, the vast majority of Class members purchased their shares on the public markets during the year and a half of public trading between the date of the IPO and the revelation of ZST's false and misleading statements in the Registration Statements.   Indeed, over the course of the 379 trading days between the initial public offering and when the truth was revealed, ZST stock

---

[14]  Although the money for the securities registered under the Amended Registration Statement would go directly to WestPark, Rappaport, and the WestPark Defendants, their possession of the securities in the first place was part of an integrated scheme to bring ZST public.

had an average daily trading volume of 166,400 shares *per day*.  By the mere fact of filing the Amended Registration Statement, including its repetition of the false and misleading statements in the Initial Registration Statement, Defendants have armed themselves with technical standing arguments against virtually ***all*** public market purchasers from January 27, 2011 until the end of the class period—a whopping 82% of class period, and near 100% of the shares.  Under ZST's WRASP Process scheme, the *only* purchasers or acquirers of ZST common stock that would have standing would be those that purchased their shares on or before January 14, 2010, and then proceeded to hold those shares for over a year and a half.  The existence of such long-term holders is highly unlikely considering that the stock was extremely volatile throughout the class period—trading between $4.38 and $11.78.  Defendants recognized that as ZST is a small-cap company from a foreign issuer, the possibility of a holder buying on the offering and sitting through these volatile price movements is highly unlikely.

Neither the Initial Registration Statement, nor the Amended Registration Statement, nor any subsequent document, nor any of Defendants' briefs provide a rational explanation for the avoidance of the standard securities industry practice of registering all outstanding shares under a single registration statement.

Finally, ZST gained no economic benefits from the bifurcation of the Reverse Merger Shares into two offerings.  Moreover, as the WestPark shares comprised less than 6% of the Company, and as their existence and soon to be available status was revealed in the Initial Registration Statement, their dilutive effect would be minimal.

PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

11

Thus, there was no logical reason, whatsoever, for treating these shares differently as part of the public offering, *other* than to empower Defendants' motions to dismiss with the tracing argument they now employ.

### 4.      Defendants' Scheme Should Not Be Allowed

Defendants' assertion that the Securities Act was designed to be rigid, technical, and inflexible.   ZST's Br. at 10; WestPark's Br. at 6-7; Rodman's Br. at 12. Defendants are wrong.   *See United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 849 (1975) ("Because securities transactions are economic in character Congress intended the application of these statutes to turn on the economic realities underlying a transaction, and not on the name appended thereto.").   Issuers, underwriters, and auditors cannot insulate themselves from liability by scheming to file sequential duplicate registration statements within months of each other. To allow Defendants to do so would defeat both the deterrent and remedial purposes of the securities laws.   *Nesbit v. McNeil*, 896 F.2d 380, 386 (9th Cir. 1990) ("deterrent policies [] underlie the federal securities laws.") (citing *Randall v. Loftsgaarden,* 478 U.S. 647, 664 (1986)).

Defendants filed one registration statement, for which they all must be responsible, regardless of how many sets of papers were filed.   This Court should follow the Ninth Circuit's guidance from *Murphy*, 626 F.2d at 645, and hold that the two registration statements were one integrated offering.

### D.      The Claims Against Rodman Are Not Subject To Rule 9(b)

Lead Plaintiff's Securities Act allegations against Rodman are properly pleaded under the liberal pleading standard of Fed. R. Civ. P. 8(a).   Rule 8(a) merely requires a "short and plain statement of the claim showing that the pleader is entitled to relief," and is applicable to claims under the Securities Act.   *In re Washington Mutual Inc. Sec. Litig.*, 259 F.R.D. 490, 504 (W.D. Wash. 2009) (applying Rule 8(a) to a Securities Act Claim).   It is well-established that for a

complaint to pass muster under Rule 8(a), a complaint must provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) (quotation omitted); s*ee also In re Daou Systems, Inc.,* 411 F.3d 1006, 1027 (9th Cir. 2005) ("In a case where fraud is not an essential element of a claim … '[a]llegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a).'") (quoting *Vess v. Ciba–Geigy Corp. USA,* 317 F.3d 1097, 1103-04 (9th Cir. 2003)).

In the Ninth Circuit, a plaintiff's claim sounds in fraud only where a plaintiff alleges "a unified course of fraudulent conduct and rel[ies] *entirely* on that course of conduct as the basis of a claim." *In re Daou,* 411 F.3d at 1027 (emphasis added) (quoting *Vess,* 317 F.3d at 1105). In *In re Countrywide Financial Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1162-63 (C.D. Cal. 2008), the court rejected the defendant's argument that "[w]hen a misrepresentation forming the basis of a Section 11 claims is also alleged to support a claim for fraud under Section 10(b), the Section 11 claim is 'grounded in fraud'." ZST's Br. at 20. The *Countrywide* court found that "*In re Stac Elecs. Sec. Litig.,* 89 F.3d 1399, 1405 n.2 (9th Cir. 1996) held only that the particularity requirements of Rule 9(b)[15] are applicable to Section 11 claims 'where the gravamen of the Amended Complaint is plainly fraud' and a plaintiff makes only 'nominal efforts' to disclaim fraud as to some defendants." 588 F. Supp. 2d at 1163.

To the extent that the pleading standards of Rule 9(b) apply at all, they may ***only*** apply to those defendants to whom it is alleged acted fraudulently, not those defendants that are alleged to have acted negligently. *See, e.g., Countrywide*, 588 F. Supp. 2d at 1163 ("Not all Defendants are alleged to have

---

[15]   Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

participated in the fraud."). The law in this Circuit is clear—where an issuer fraudulently makes false and misleading statements in a registration statement and underwriters negligently distribute securities utilizing a materially false and misleading registration statement, a plaintiff alleging violations of the Securities Act against the underwriters and accountants need only meet the notice pleading requirements of Rule 8(a). *Washington Mut*, 259 F.R.D. at 504 ("Rule 9(b) applies only to those defendants also accused in the underlying fraud. . . . In this action, Defendants Killinger [the CEO] and Casey [the CFO] are the only parties charged with securities fraud in addition to the non-fraud claims under the Securities Act, and they alone receive 9(b) protection."); *Countrywide*, 588 F. Supp. 2d at 1163. Logically, this is because the purpose of Rule 9(b) is to protect the reputation of the defendants against whom allegations of fraud are made, and thus it makes no sense to afford Rule 9(b) protection to those defendants alleged to have acted negligently.

Plaintiff alleges no fraudulent conduct against Rodman,[16] and Rodman points to no specific fraudulent allegations against it in its brief. Rodman's Br. at 19 (pointing to no allegations of fraudulent conduct by Rodman in the Amended Complaint). Thus, the Securities Act Claims against Rodman do not sound in fraud and are only subject to the liberal pleading requirements of Rule 8(a).

### E.   Rodman's Due Diligence Defense
###     Must Await Summary Judgment

Rodman asserts that it was allowed to rely on Defendant Kempisty's audited financial statements, and thus had no duty to investigate further. This assertion of its affirmative "due diligence" defense is premature and should be

---

[16]   *See* ¶¶37, 38, 52, 80 n.22 (allegations specifically against Rodman).

rejected on a motion to dismiss. *See, e.g., In re Prestige Brands Holding, Inc.*, No. 05-6924 (CLB), 2006 WL 2147719, at *9 (S.D.N.Y. July 10, 2006) (denying underwriter defendants' motion to dismiss, and noting that the defendants were "free to attempt to avail themselves of the affirmative defense of 'due diligence' … [but] [n]aturally this Court takes no position on the merits of such a defense at this time"); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, No. MDL-1446, Civ. A. H-01-3624, 2005 WL 3704688, at *15 (N.D. Tex. Dec. 5, 2005) ("Affirmative defense [] of due diligence … is [a] fact-specific determination of the 'reasonableness' of a defendants' investigation or of his reliance on the opinion of an expert [which is] 'a question [not] properly resolved on a motion to dismiss.'") (citation omitted); *In re Friedman's, Inc. Sec. Litig.*, 385 F. Supp. 2d 1345, 1369 (N.D. Ga 2005) (due diligence defense involves "determinations of reasonableness of a . . . defendant's reliance on expert opinion [which] are fact-intensive inquiries . . . not properly resolved on a motion to dismiss.") (internal quotation and citation omitted).

Indeed, the Underwriter Defendants will be given a full and fair opportunity, at both the summary judgment stage and trial, to prove that they acted with due care, *i.e.*, made a "reasonable investigation" and had "reasonable ground" to believe that the statements in the offering materials were true and did not omit any material facts. *See* 15 U.S.C. § 77k(b)(3)(A).

## II.  Securities Exchange Act Claims

This Section addresses Defendants' motions to dismiss Plaintiff's Securities Exchange Act claims, specifically this Section responds to ZST's Br. §§ III and IV and WestPark's' Br. § II.

### A.  WestPark Is Liable Under Section 10(b) For Making Materially False And Misleading Statements With Scienter

The Amended Complaint added claims arising under Section 10(b) of the

PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

15

Exchange Act against WestPark for making false statements with scienter in the offering documents for ZST common stock.   A statement is "made" by an underwriter under the Exchange Act when statements in the offering documents may be attributed to the underwriter through the underwriter's endorsement of the materially false and misleading statements, or when the underwriter distributes those false and misleading statements to the investing public.   *In re Allstate Life Insurance Co. Litig.*, No. 09-8162, 2012 WL 1764497, at *5 (D. Ariz. Jan. 23, 2012). WestPark knowingly endorsed, added its name to, and distributed ZST's materially false and misleading offering documents.

These allegations are subject to the pleading requirements of Fed. R. Civ. P. 9(b) and the PSLRA.   *See Nursing Home Pension Fund, Local 144 v. Oracle Corp.,* 380 F.3d 1226, 1230 (9th Cir. 2004).   Rule 9(b) requires that "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).   *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc.,* 416 F.3d 940, 946 (9th Cir. 2005).   The PSLRA requires that:

> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

15 U.S.C. § 78 u-4(b)(1)(B); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319-322 (2007). The PSLRA also requires that "the complaint shall … state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."   15 U.S.C. § 78u-4(b)(2); *see Tellabs,* 551 U.S. at 319-322.   The required state of mind is one of "deliberate recklessness."   *Nursing Home Pension Fund,* 380 F.3d at 1230,

1   1235 ("The PSLRA was designed to eliminate frivolous or sham actions, but
2   not actions of substance.") (reversing the district court's 12(b)(6) dismissal).

3           **1.    WestPark Made Materially False and Misleading**
4                        **Statements In The Offering Documents**

5         Relying upon the Supreme Court's decision in *Janus Capital Group, Inc.*
6   *v. First Derivative Traders*,[17] a case that did not involve underwriter liability
7   under Section 10(b) at all, WestPark argues that it should not be held liable for
8   the materially misleading statements it made in ZST's offering documents.
9   WestPark's Br. at 7-9.  Unsurprisingly, WestPark cites to no cases holding that
10  an underwriter is not liable under Section 10(b) for the false statements in
11  offering documents that it promotes and sells, and is contrary to the very purpose
12  of having an underwriter.  As underwriter, WestPark added its name to,
13  promoted, and distributed the offering materials.  As one court observed when
14  faced with a similar argument under *Janus Capital*, "[o]ne doesn't have to be the
15  inventor of a lie to be responsible for knowingly repeating it to a dupe."  *In re*
16  *National Century Financial Enterprises, Inc.*, No. 03-1565, 2012 WL 685495, at
17  *20 (S.D.N.Y. March 2, 2012) (quoting *S.E.C. v. Lyttle*, 538 F.3d 601, 604 (7th
18  Cir. 2008)).

19        Lead Plaintiff has pleaded that WestPark allowed its name to be
20  prominently festooned on the offering documents, (*see* Initial Registration
21  Statement); by distributing the offering documents that contained false
22  statements (¶27, 28); and by agreeing to underwrite the offerings and allow the
23  shares of common stock to be sold in connection with those false statements
24  (¶27, 28).  Thus, Lead Plaintiff has presented a triable issue at the pleading stage

25
26
27  _____
    [17]  131 S. Ct. 2296, 2301 (2011).
28
    PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO
    DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

as to whether the false statements within the offering documents may be attributed to WestPark.

WestPark's statement that "Plaintiff does not allege that WestPark (or Rappaport) 'made' any of the allegedly misleading statements that form the basis of Plaintiff's Section 10(b) claim" incorrectly parses the language of Lead Plaintiff's Amended Complaint. The Amended Complaint plainly alleges:

> Rappaport [18] conspired and actively participated with the ZST Defendants to (a) engineer a reverse merger whereby ZST could gain access to United States markets; (b) engineer a two-stepped public offering to insulate himself from liability emanating from the false and misleading statements in public offering documents; and (c) mislead the public through the issuance of false and misleading statements in those offering documents. (¶181.)

WestPark's "active participat[ion]" with ZST to "mislead the public through the issuance of false and misleading statements in those offering documents," plainly alleges that WestPark participated in the creation of the false statements. More importantly, WestPark was not a hapless participant in the fraud that lacked authority over any offering documents. WestPark was the *architect* of the fraud. As discussed above, WestPark worked with ZST from 2007-2010 to help engineer every aspect of the fraud upon American investors, from the reverse merger to bringing the Company public. Thus, WestPark is clearly responsible for the fraudulently issued statements as it, indeed, authored them.

Despite having pleaded that WestPark was in fact the architect, WestPark need not have been the architect of the fraud to be liable for the false statements

---

[18]  Due to Lead Plaintiff's alter-ego theory, "Rappaport" as used herein includes WestPark. *See* ¶34.

in the offering documents.  Moreover, WestPark "made" the false statements by allowing its name to be prominently featured on the offering documents, lending legitimacy to the offering for American investors.  Thus, WestPark's "prominent position on the [offering documents] could only mean that the [offering documents] were attributed, at least in part, to the underwriters."  *Allstate*, 2012 WL 1764497 at *5.[19]  This is because, "as the Supreme Court held in *Janus*, 'attribution within a statement … is strong evidence that a statement was made by … the party to whom it was attributed.'"  *Id.* (quoting *Janus Capital*, 131 S. Ct. at 2301); *see also National Century*, 2012 WL 685495 at *19 (statements in offering documents could be attributed to the underwriter where the underwriter's name appears prominently on the front pages of the document).

In its attempt to duck responsibility for its materially false and misleading statements, WestPark twists *Janus Capital* to mean that only an issuer can be liable for the false statements in offering documents, claiming only the issuer has "ultimate authority" over those statements.  WestPark's Br. at 7-8.  This lack of control defense, however, has been specifically rejected.   As underwriter, WestPark had the ability to control and prevent the shares from being sold into the market in association with the materially false and misleading offering documents.  Thus, WestPark did have "ultimate authority," as defined in *Janus Capital. See City of Rosevill Employees' Retirement System v. EnergySolutions, Inc.,* 814 F. Supp. 2d 395, 418 (S.D.N.Y. 2011) ("the Sponsors controlled the … sale of stock. …  [They] therefore, had "ultimate authority" over the two Offerings, as required by *Janus*.") (quoting *Janus*, 131 S. Ct. at 2302).[20]

---

[19]  WestPark endorses the reasoning of the court in *Allstate Life* in its own brief. WestPark's Br. at 11.

[20]  WestPark also argues that it was under no duty to speak truthfully in the offering documents.  WestPark's Br. at 9 n.5.  This Court has already ruled that Lead Plaintiff has stated a claim based upon the misleading statements in the

1

## 2.    **WestPark Made Its False Statements With Scienter**

2

Lead Plaintiff has adequately pleaded that Defendant WestPark acted with

3 knowledge or with reckless disregard in implementing its WRASP Process

4 herein.   *Supra* at § I.C; (¶¶6-7; 50-58).   Indeed, Lead Plaintiff has pleaded

5 numerous facts in support of this theory, including that the nature of the two-part

6 IPO brings no real advantages *other* than as a mechanism of avoiding liability.

7 *Supra* at § II.C.3.  Further, WestPark was intimately familiar with all aspects of

8 ZST's business, as it designed and implemented the WRASP Process and thus

9 acted with specific knowledge.   Thus, any argument that WestPark somehow

10 lacked knowledge of or was not reckless in lacking knowledge of, the falsity in

11 ZST's offering documents is ludicrous.   By designing and implementing a

12 scheme specifically designed to avoiding liability for fraud, and by legitimizing

13 and endorsing the materially false and misleading statements in the ZST offering

14 documents, WestPark clearly acted with scienter.

15

In *New Mexico Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1095

16 (9th Cir. 2011), the Ninth Circuit held that "a complaint can plead scienter by

17 raising a strong inference that the defendant … acted with reckless indifference."

18 The Ninth Circuit thereby adopted the Supreme Court's edict that a complaint

19 should survive a motion to dismiss "if a reasonable person would deem the

20 inference of scienter cogent and at least as compelling as any inference one

21 could draw from the facts alleged."  641 F.3d at 1095 (quoting *Tellabs*, 551 U.S.

22 at 324.  "[S]cienter is inherently a factual inquiry, requiring a finder of fact to

23 make a determination concerning what was known or reasonably should have

24

---

25 offering documents.  *See* Court's Order Re: Motions to Dismiss, entered on

26 February 15, 2012 (the "Order") [Docket No. 93], at 10-12.  As these false and

misleading statements may be attributed to WestPark, WestPark was clearly

27 under a duty to speak truthfully.

28

PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

20

1      been known to a person or persons at a particular time." *In re Homestore.com,*

2      *Inc. Sec. Litig.*, 347 F. Supp. 2d 790, 804 (C.D. Cal. 2004). "The 9th Circuit

3      recently re-iterated that 'falsity may itself be indicative of scienter where it is

4      combined with allegations regarding a management's role in the company that

5      are particular and suggest that the defendant had actual access to the disputed

6      information, and where the nature of the relevant fact is of such prominence that

7      it would be absurd to suggest that management was without knowledge of the

8      matter.'" Order at 9-10 (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552

9      F.3d 981, 1000 (9th Cir. 2004)).

10      Lead Plaintiff has also pleaded particularized facts demonstrating

11      WestPark's intimate knowledge of ZST's business operations. For example, as a

12      result of the reverse merger, Defendant Rappaport, CEO of WestPark, was

13      named as a Chief Executive Officer and a Director of ZST in 2007 and 2008.

14      (¶83.) Also, WestPark and its employees owned 6% of ZST after the reverse

15      merger and before the IPO. (¶83 n.25.) Through these actions, WestPark plainly

16      could not have believed the accounting numbers as reported to the SEC were

17      accurate. Order at 10 ("the Court finds that the marked disparity between the

18      revenue figures reported to American and Chinese regulatory bodies, along with

19      the Company's subsequent and ambiguous explanation of those discrepancies,

20      the strong inference that the Chinese statement reflected an overstatement in

21      revenues reported to the SEC are sufficient to constitute falsity and scienter

22      under the PSLRA.").

23      Due to the massive disparities between the SEC and SAIC filings, a mere

24      glance at the SAIC filings would have readily lead to the discovery of the truth.

25      (¶1-4); *see also* Order at 12 n.2 ("Accounting errors that prove to have a

26      significant impact on core business operations, i.e. cash, revenue, profits,

27      liquidity, or viability of a product, sometimes give rise to a compelling inference

28

PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

of scienter.  This is so because such substantial errors give rise to an inference that the defendant acted recklessly or intentionally used deceptive accounting principles to disguise serious problems.") (quoting *In re Medicis Pharmaceutical Corp. Sec. Litig.*, No. 08-821, 2010 WL 3154863, at *5 (D. Ariz. Aug. 9, 2010). At the very least, WestPark was plainly aware of the existence of the SAIC filings and was reckless in ignoring their import.  In addition to the facts discussed above, WestPark was intimately familiar with Chinese regulatory filings as it had brought a dozen Chinese based companies public in the United States.  (¶139.)   More importantly, WestPark had established its own local branches in China, which were required to file their own SAIC reports.  (¶140.) In addition, WestPark had established joint ventures in China which were subject to the same SAIC reporting requirements as ZST.  (¶141.)

### 3.   Lead Plaintiff Relied Upon WestPark's False And Misleading Statements In The Offering Documents

WestPark's reliance defense is essentially a repetition of its misplaced argument that it did not make any false and misleading statements.  WestPark's Br. at § II.C.  Moreover, WestPark self-servingly concludes that since it did not make any false statements, purchasers or acquirers of ZST common stock could not have relied upon any such false statements.  *Id.*  This assertion fails for the reasons discussed above, *supra* at § II.A.I.  Indeed, the false statements in ZST's offering documents were attributed to WestPark because its name was prominently featured on the documents, because it distributed the offering documents, and because, as underwriter, it had the ultimate obligation not to sell the ZST common stock into the marketplace that formed the basis of Lead Plaintiff's claims.

**B.     WestPark Is Liable Under Rules 10b-5(a) and/or (c)**

WestPark is liable under Rules 10b-5 (a) and/or (c) for developing and implementing its WRASP Process and using it to bring ZST common stock into the public markets.  "Under Rule 10b-5(a) or (c), a defendant who uses a device, scheme, or artifice to defraud, or who engages in any act, practice, or course of business which operates or would operate as a fraud or deceit, may be liable for securities fraud."  *S.E.C. v. Mercury Interactive, LLC*, No. 07-2822, 2011 WL 5871020, at *2 (N.D. Cal. Nov. 22, 2011) (quoting *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1057 (9th Cir. 2011)).   A "device" is "[t]hat which is devised, or formed by design; a contrivance; an invention; project; ***scheme; often, a scheme to deceive***; a stratagem; an artifice. . . ."  *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 n.20 (1976).  A defendant "may 'be liable as part of a fraudulent scheme based upon misrepresentations and omissions under Rules 10b-5(a) or (c) when the scheme also encompasses conduct beyond those misrepresentations.'"  *Mercury*, 2011 WL 5871020 at *2 (quoting *Three Sarl*, 655 F.3d at 1057).

As alleged in the Amended Complaint, WestPark engaged in an overarching conspiracy to bring ZST common stock into the United States's public securities markets  (¶¶34, 58, 83.)  WestPark's scheme included numerous overt acts that were totally unrelated to the preparation and issuance of materially false and misleading statements in the offering documents, including the reverse-merger, the swap of the Reverse Merger Shares, (¶58), and the bifurcation of the IPO into two sets of registration documents. (¶6, 7.)  The comprehensive scheme, including the additional conduct unrelated to fraudulent statements, states a claim for scheme liability under Rule 10b-5(a) and/or (c).  *Mercury*, 2011 WL 5871020, at *2 ("the Court concludes that the backdating scheme alleged by the SEC

encompasses enough conduct beyond the concealment of the compensation expenses …, at least at the pleading stage.").

### C.    The Amended Complaint Adequately Alleges That The **Registration Statement Was Materially False and Misleading**

Defendant ZST's assertion that Lead Plaintiff's theory fails to state a claim raises no new arguments.  ZST's Br. at § III.  This Court has already ruled that Lead Plaintiff has adequately pleaded falsity.  Order at 10-12. [21]

Moreover, the dramatically incorrect revenue numbers set forth in the Registration Statement are certainly materially false and misleading.  The SEC has made clear that "[f]inancial statements … which are not prepared in accordance with generally accepted accounting principles [GAAP] will be presumed to be misleading or inaccurate."   17 C.F.R. § 210.4-01(a)(1).   ZST's financial statements do not comply with GAAP because GAAP does not permit overstatements of revenue or income.  (¶¶88-92); *cf. In re Daou*, 411 F.3d at 1016 ("[O]verstating of revenues may state a claim for securities fraud, as under GAAP, 'revenue must be earned before it can be recognized.'") (citations and emphasis omitted).  Clearly, financial statements that overstate revenue and income by over 1,000 percent are false and misleading and violate the most basic accounting principles of truthfully representing an enterprise's financial performance.  (¶¶85, 88-93.)

Lead Plaintiff has pleaded that "[a]lthough there is some disparity between Chinese accounting methodology and U.S. accounting standards, these deviations cannot rationally explain the incredible differences of magnitude between the numbers reported in China and those reported in ZST's SEC

---

[21]   ZST recognizes this and states that it includes these arguments to preserve its rights for appeal.  ZST's BR. at 18 n.10.

filings." (¶64 n.14.)  Given the directly contradictory nature of the two sets of financials, Plaintiff has more than "state[d] a claim to relief that is *plausible* on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citation omitted).

Alternatively, Defendants' statements were materially false and misleading regardless of whether the revenue numbers provided to the SEC were correct or not.  Moreover, once Defendants revealed to the marketplace the existence of one set of financial records (those submitted to the SEC), while omitting to mention the existence of a second, materially different set of financial records (those submitted to the SAIC), Defendants mislead the market. (¶1.)  *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008) (A statement is misleading if it would give a reasonable investor the impression of a state of affairs that differs in a material way from the one that actually exists.); *Brody v. Transitional Hosp's Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002) (even a literally true statement can be actionable where it "create[s] an impression of a state of affairs that differs in a material way from the one that actually exists.").

### D.  ZST Cannot, On A Motion To Dismiss, <u>Meet Its Burden Of Proving Negative Causation</u>

Defendant ZST's repetition of its negative causation defense must fail. This Court has already held that Lead Plaintiff has adequately pleaded loss causation.  Order at 14-15.

Moreover, Defendant ZST's negative causation theory makes no sense on its face.  According to ZST, the steep stock drop of 40 percent on April 21, 2011, was not in any way caused by the revelation that the Company had either misstated its revenue by millions of dollars or was run by scofflaws deliberately maintaining a false set of books to deceive regulators and investors.

Instead, ZST argues that the 40 percent drop in the Company's stock price was due to the much less substantial allegations that the Company overpaid for

PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

25

some real estate in China and had a somewhat smaller customer base than believed.  ZST's Br. at 7-8, 16-17, 18-19.  ZST offers the alternative theory that the damning allegations concerning ZST's massive revenue differentials were widely disseminated into the marketplace on November 3, 2010, a day in which ZST's stock actually *rose* by 1 percent.  Such an argument is nonsensical on its face.  *See Countrywide*, 588 F. Supp. 2d at 1171 ("[I]f a registration statement makes one very important misrepresentation, it is easy to determine when the truth came to the market: in an efficient market, the security's value is likely to drop dramatically at that time.").

Defendants' argument is further weakened by the stock price reaction to ZST's press release on April 29, 2011, wherein ZST denied the inaccuracy of its revenue numbers.  Indeed, on April 29, 20011, without addressing the purported real estate misdealings or inflated customer base, ZST asserted that its reported revenue was accurate.  Moreover, the materiality of ZST's reported revenue numbers is clearly demonstrated by ZST's stock increase of 6.5 percent on that day in direct response to ZST's denial of wrongdoing concerning its financial reporting.

**III.    Should The Court Dismiss The Amended Complaint, Lead Plaintiff Should Be Granted Leave To Amend**

The decision whether to grant leave to amend generally rests "within the discretion of the trial court."  *Mandosia v. Soros*, No. 11-1352, 2011 WL 836642, at *1 (C.D. Cal. Mar. 4, 2011) (Feess, J) (quoting *Swanson v. U.S. Forest Serv.*, 87 F.3d 339, 343 (9th Cir. 1996) (citation omitted)).  Leave to amend a pleading is to be "freely give[n] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Ninth Circuit has stated that the policy of allowing amendments "is to be applied with extreme liberality."  *Morongo Band of Mission Indians v. Rose,* 893 F.2d 1074, 1079 (9th Cir. 1990).

PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT

Courts may deny leave to amend where: (1) there is evidence of undue delay, bad faith, or dilatory motive on the part of the movant; (2) amendment will be futile; or (3) the nonmovant will be prejudiced if leave to amend is granted. *See Foman v. Davis,* 371 U.S. 178, 182 (1962). Nevertheless, "[a]bsent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003) (citation omitted).

Here, the *Foman* factors favor granting leave to amend. Defendants will not be prejudiced and Lead Plaintiff has not acted in bad faith. More importantly, the ever-evolving new facts, described in part below, make particularly appropriate a grant of a right of leave to amend. *City of Los Angeles v. AT & T Mobility LLC*, No. 11-06995, 2012 WL 171680, at *2 (C.D. Cal. Jan. 20, 2012) ("The court may consider new facts raised for the first time in AT & T's opposition in determining whether to grant leave to amend.")

Lead Plaintiff cured the standing deficiencies in his earlier complaint by recasting his allegations as a scheme whose intent was to thwart the federal securities laws through a deceptive device. (¶¶6-7, 29-36, 50-60.)

For example, on March 27, 2012, 18 days after Lead Plaintiff had filed his Amended Complaint, in a press release entitled: "NASDAQ Halts ZST Digital Networks, Inc.," the NASDAQ Stock Market announced it was *halting trading* of ZST securities, and that "[t]rading will remain halted until ZST Digital Networks, Inc. has fully satisfied NASDAQ's request for additional information." Three days later, on March 30, 2012, in a Form 8-K, filed with the SEC, ZST revealed to the market that BDO China Dahua CPA Co., Ltd. ("BDO China"), *the Company's auditor, had resigned in protest*. According to the

Form 8-K, BDO China stated in its resignation letter that it was resigning because:

> In consideration of the agreed upon procedures we completed on December 20, 2011 for the cash verification requested by NASDAQ, which including visiting in person of the bank, physically observing bank employees printing bank statements, etc., we planned a more simple procedure to confirm the bank balance; but the Company refused and insisted we follow the process the Company had arranged."

> On March 6, 2012, the Company informed us that the bank account with the largest balance as of December 31, 2011 was closed on February 24, 2012 and the balance on this bank account was transferred to a new account in another bank. The balance as of December 31, 2011 on the former bank account was no longer available for confirmation as we previously requested.

Even more damning, BDO China's resignation letter revealed a probability of material errors in ZST's previous financial statements:

> The restrictions placed on us by the Company had substantially limited our work scope and we determined were severe enough that caused us from being able to complete the December 31, 2011 audit. Therefore, we must resign as auditor of the Company. ***In addition, the restrictions on the audit procedures could indicate a probability that there were material errors in previously issued financial statements.*** As a result of the restriction and work scope limitation, we are unable to rely on the Company's management's representations as they related to previously issued financial statements."

(Emphasis added).

Worse, ZST is plainly aware of the existence of these material facts, including whatever unlawful conduct it was attempting to conceal from NASDAQ and from its auditors, BDO China.

DATED: June 15, 2012

**GLANCY BINKOW & GOLDBERG LLP**


By:  _s/ Lionel Z. Glancy_
Lionel Z. Glancy
Michael Goldberg
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile:  (310) 201-9160
Email:  info@glancylaw.com


Marvin L. Frank (_pro hac vice_)
Benjamin D. Bianco (_pro hac vice_)
Gregory A. Frank (_pro hac vice_)
**MURRAY FRANK LLP**
275 Madison Avenue, Suite 801
New York, New York 10016
Telephone: (212) 682-1818
Facsimile:  (212) 682-1892
Email:  mfrank@murrayfrank.com

PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTIONS TO DISMISS THE AMENDED COMPLAINT
29

1
2

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO
CENTRAL DISTRICT OF CALIFORNIA LOCAL RULES
AND ECF GENERAL ORDER NO. 10-07**

3

I, the undersigned, say:

4
5
6

I am a citizen of the United States and am employed in the office of a member of the Bar of this Court. I am over the age of 18 and not a party to the within action. My business address is 1925 Century Park East, Suite 2100, Los Angeles, California 90067.

7

On June 15, 2012, I caused to be served the following document:

8
9

**PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTIONS' TO DISMISS
THE AMENDED COMPLAINT**

10
11

By posting the document to the ECF Website of the United States District Court for the Central District of California, for receipt electronically by the following parties:

12

**See Attached Service List.**

13

And on any non-ECF registered party:

14
15
16
17

**By Mail**: By placing true and correct copies thereof in individual sealed envelopes, with postage thereon fully prepaid, which I deposited with my employer for collection and mailing by the United States Postal Service. I am readily familiar with my employer's practice for the collection and processing of correspondence for mailing with the United States Postal Service. In the ordinary course of business, this correspondence would be deposited by my employer with the United States Postal Service that same day.

18
19
20

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 15, 2012, at Los Angeles, California.

21

*s/ Lionel Z. Glancy*
Lionel Z. Glancy

22
23
24
25
26
27
28

# Mailing Information for a Case 2:11-cv-03531-GAF -JC

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Jay S Auslander**
  jauslander@wilkauslander.com

- **Benjamin D Bianco**
  bbianco@murrayfrank.com

- **Matthew Clark Bures**
  mbures@dlflawyers.com,sdouglas@dlflawyers.com

- **Julie Cilia**
  jcilia@wilkauslander.com,filing@wilkauslander.com

- **Christopher R Fenton**
  christopher.fenton@shearman.com

- **Gregory A Frank**
  gfrank@murrayfrank.com

- **Marvin L Frank**
  mfrank@murrayfrank.com

- **Lionel Zevi Glancy**
  lglancy@glancylaw.com

- **Michael M Goldberg**
  mmgoldberg@glancylaw.com,dmacdiarmid@glancylaw.com,info@glancylaw.com

- **Stephen D Hibbard**
  shibbard@shearman.com,andrew.rodgers@shearman.com,rcheatham@shearman.com

- **James C McMillin**
  James.McMillin@mcafeetaft.com,dianna.peters@mcafeetaft.com

- **Elizabeth Graham Minerd**
  eminerd@reedsmith.com,sandragarcia@reedsmith.com

- **Megan Rae Peitzke**
  mpeitzke@cozen.com,llund@cozen.com

- **Andrew J Rodgers**
  andrew.rodgers@shearman.com

- **Laurence M Rosen**
  lrosen@rosenlegal.com

- **Natalie Shkolnik**
  nshkolnik@wilkauslander.com

- **John D Stiner**
  John.Stiner@mcafeetaft.com

- **Edward G Timlin**
  edward.timlin@shearman.com

- **Shiyong Ye**
  sye@murrayfrank.com

- **Joseph Zelmanovitz**
  jzelmanovitz@wilkauslander.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

## <u>SERVICE LIST BY MAIL</u>

ZST Digital Networks, Inc.
Building 28, Huzhu Road,
Zhongyuan District
Zhengzhou, Henan 450006
People's Republic of China

*For Defendants, Zhong Bo,
Zhong Lin, John Chen, Zeng
Yun Su, Xue Na, Yang Ai Mei,
Tian Li Zhi, Sheng Yong & Liu
Hui Fang*